EVELYN F. LAYSON, Respondent, v. JACKSON COUNTY, MISSOURI, Appellant, KANSAS CITY, MISSOURI, a Municipal Corporation, Intervenor-Respondent, No. 45054—290 S. W. (2d) 109.

Division One, April 9, 1956.

Motion for Rehearing or to Transfer to Banc Overruled, May 14, 1956.

*J. Marcus Kirtley,* County Counselor, and *Louis Wagner,* Assistant County Counselor, for appellant.

*Benj. M. Powers,* City Counselor, and *J. L. Parks,* Assistant City Counselor, for intervenor-respondent.

[109] COIL, C.—The question presented is whether Jackson County was obligated to pay the entire compensation of the judges and clerks who [110] served in the City of Kansas City at the November 4, 1952, general election or whether the county and city each was obligated to pay one half; at which general election Kansas City submitted to its voters four charter amendments and one municipal bond proposal.

Respondent, plaintiff below, was the assignee of seven warrants, each in the sum of $8.00, drawn by the Board of Election Commis-

sioners of Kansas City, each payable to one of seven judges of election and directed to the treasurer of Jackson County for payment. Jackson County refused to pay the warrants when presented for the reason that, in the county's view, they were illegally drawn and void because each such draft represented the full amount due the respective judge of election rather than one half the amount so due.

The City of Kansas City intervened as a party defendant and is a respondent here. We have jurisdiction for the reason that Jackson County is a record party. Article V, Section 3, Constitution of Missouri 1945, V.A.M.S.

The trial court entered judgment for plaintiff for the face amount of each warrant. Jackson County has appealed and contends, in effect, that the trial court erred in rendering judgment for plaintiff because the county was liable for only one half the amount due each judge of election.

The question as presented here calls for the construction of certain language contained in these two sections of Chapter 117, RSMo 1949, 8 V.A.M.S.:

"[117.140] In all cities to which this chapter applies the salaries of the election commissioners and assistants shall be paid one-half by the city and one-half by the county, or in the case of cities located in more than one county, such salaries shall be paid as is provided in section 117.150. The election commissioners shall each receive a salary of three thousand dollars per year, payable monthly. The members of the board designated as the chairman and the secretary, respectively, shall be paid an additional salary of six hundred dollars per year, payable monthly. The chief assistant employed by the board shall receive a salary not to exceed four thousand dollars per year, payable monthly. Other assistants, not exceeding three in number, shall receive a salary of not to exceed three thousand two hundred dollars per year, payable monthly. Other assistants, not exceeding ten in number, shall receive a salary of not to exceed two thousand nine hundred dollars per year, payable monthly; all other additional assistants, if any, shall receive not to exceed eight dollars per day for the time actually employed. Compensation for overtime services necessarily and actually performed by any persons employed at the office of the board may be paid at the rate of such employee's regular pay. Precinct judges and clerks shall receive as pay eight dollars for each day or part of day while on duty, except pay shall be allowed only for those days mentioned in this chapter. *All expenses incurred by said board of election commissioners and all costs and expenses of registration and election in such cities shall be paid one-half out of the city treasury and one-half out of the county treasury,* or in the case of cities located in more than one county all such expenses shall be paid as is provided by section 117.150." (Our italics.)

"[117.170]   At all general, county, state or other elections, which include officers elected throughout a whole county, although other than state or county officers are also elected, and at all special elections for a county or state officer or member of congress or member of the legislature, each such county shall pay the judges and clerks of election for their services under this chapter in connection with the election held within each such respective county."

It is apparent that the dispute is essentially between Kansas City and Jackson County and resolves itself into whether the following language of Section 117.140, supra, or the following language of Section 117.170, supra, was applicable to the facts: "[117.140] All expenses incurred by said board of election commissioners and all [111] costs and expenses of registration and election in such cities shall be paid one-half out of the city treasury and one-half out of the county treasury, * * *." "[117.170] At all general, * * * elections which include officers elected throughout a whole county, although other than state or county officers are also elected, * * * each such county shall pay the judges and clerks of election for their services * * *."

Jackson County contends that compensation of judges and clerks is an *expense of election* within the language of Section 117.140, supra, while Kansas City contends that the November 4, 1952, election, being a general election which included officers elected throughout Jackson County, was controlled by the provisions of Section 117.170, supra, in so far as concerned payment of judges and clerks.

■   We bear in mind that these statutes relating to the payment of judges and clerks of election must be read in pari materia and, if possible, effect given to each clause and provision, Davenport v. Teeters, Mo. App., 273 S.W. 2d 506, 510[1, 2]; that where one statute deals with a subject in general and comprehensive terms and another deals with the same subject in a more minute and definite way, the two should be read together and harmonized if possible, with a view to giving effect to a consistent legislative policy, but that to the extent of any repugnancy between them the definite prevails over the general, State ex rel. Buchanan County v. Fulks, 296 Mo. 614, 626, 247 S.W. 129, 132; and that we must, if possible, reconcile any apparent conflict in these two statutes with the general legislative purpose, State ex rel. McKittrick v. Carolene Products Co., 346 Mo. 1049, 1059, 144 S.W. 2d 153, 155[2, 3].

■   We have no difficulty in harmonizing the provisions of the above-quoted sections and in arriving at the conclusion that the provisions of Section 117.170 were applicable to the instant facts. We agree with the county that the language of Section 117.140 (i.e., the words "expenses of * * * election"), standing alone, included the compensation of judges of elections, and that there existed a seeming conflict between that section and Section 117.170 which

specifically provided for the county to pay the expenses of the judges of election at *all* general elections. But when other relevant matters, including other sections of the same chapter of the statutes, are considered, we think that seeming conflict disappears.

Section 117.050 provided for the creation of a board of election commissioners in Kansas City and, among other things, prescribed their powers and duties. Subsection 6 of Section 117.050 gave the board of election commissioners the power to make rules and regulations for "the registration of voters and *the conduct of elections.*" (Our italics.) Section 117.250 provided that the board of election commissioners "shall provide all necessary ballot boxes and all registry records, poll books, tally sheets, ballots, blanks and stationery of every description, * * * and other equipment necessary and proper *for the registry of voters and the conduct of such elections * * *.*" (Our italics.) Those expressions, "registration of voters" and "conduct of elections", used in other sections of the same chapter considered in connection with the specific provision in Section 117.170 as to the payment of judges and clerks by the county, makes it likely that the language ("All expenses incurred by said board of election commissioners and all costs and expenses of registration and election in such cities") was intended to cover and provide for the payment of the expenses of election incident to the election board providing the equipment and paraphernalia in connection with registration of voters and the conduct of elections in Kansas City. In other words, it would appear that Section 117.140 provided for the payment of general expenses incident to the conduct of an election other than those expenses which were otherwise provided for in another section.

This construction is not only called for by the language of the sections so far mentioned, but is made more certain when Section 117.160 (the section immediately preceding Section 117.170) is considered. [112] That section provides: "At all city elections, general or special, though other than city officers may be elected at the same time with such city officers, and at all special elections in any part of the city, at which a city officer is elected, such city shall pay such judges and clerks of election for their services under this chapter." It is apparent that the legislature specified by that section (117.160) and by the following section (117.170) the kind of election for which the city in one instance, and the county in the other, was to pay the salaries of the judges and clerks of election.

We are fortified in the foregoing conclusion by considering the significance of the amendments to both Sections 117.140 and 117.170 made by the 68th General Assembly (8 V.A.M.S., Pocket Parts, §§ 117.140, 117.170). The amendment of Section 117.140 related to matters not here pertinent but significantly the legislature left unchanged the language of that section with which we are here concerned; i.e., the section as amended contains the same clause: "All

expenses incurred by said board of election commissioners and all costs and expenses of registration and election in such cities shall be paid one-half out of the city treasury and one-half out of the county treasury." The amendment to Section 117.170, however, consisted of the addition of this proviso to that section: "except that when such city submits any bond proposals, constitutional or charter amendments, or other propositions at any election provided by this section, the salaries of such judges and clerks of elections shall be paid one half out of the city treasury and one half out of the county treasury." The amendments as made constituted a clear indication by the legislature that the section which priorly had dealt specifically with the question here presented was Section 117.170 rather than Section 117.140. Otherwise it would seem that the substance of the proviso would have been added to Section 117.140 rather than to Section 117.170. And it would further appear, just as clearly, that the legislature by the fact of and the language of the Section 117.170 amendment recognized that Section 117.170 as it had existed prior to the amendment required the county to pay the salaries of judges and clerks of elections serving in Kansas City even though, at such elections, propositions were voted on which affected only Kansas City and upon which only the voters of Kansas City were eligible to vote.

Jackson County contends in its brief that the principle of practical construction of a statute by administrative public officers for a long period of time is here applicable. It is said that the Board of Election Commissioners of Kansas City, prior to the November 4, 1952, election, had always paid, without question, one half the salaries of clerks and judges who served at general elections wherein city proposals were also submitted. There is nothing in the record to support that statement. And Kansas City, while recognizing the fact that the record does not support *any* conclusion as to the matter noted, nevertheless, contends that the fact is exactly contrary to the county's contention. Under the circumstances, we, of course, may not and do not consider any prior construction by administrative officials because there is nothing before us to support either assertion.

Jackson County also argues that the effect of Section 117.170 was to provide that the only event in which the salaries of judges and clerks were to be paid solely by the county was when *city officers were elected*, along with state and county officers; that the provisions of Section 117.170 had no application to a general election at which local propositions (other than the election of city officers) were submitted; and that the general provisions of Section 117.140 were thereby applicable (as to the payment of judges and clerks) in an election at which local propositions (not involving the election of city officers) were submitted. We agree with appellant that Section

117.170 before it was amended did not specifically mention general elections at which local propositions (such as charter amendments and bond proposals) were also submitted to a limited group of the county voters. However, the language of Section 117.170, before amendment, provided in effect that the county was to pay the judges [113] and clerks "At *all* general, county, state and other elections which include officers elected throughout a whole county * * *." It would appear, therefore, that even though the submission of local propositions was not mentioned, nevertheless, Section 117.170 dealt more specifically and minutely with the matter of who was to pay judges and clerks at such an election than did Section 117.140, and it further appears that there can be no doubt that the November 4, 1952, election was a general election which included officers elected throughout the whole county and thus that election was covered by the language of Section 117.170. And we point out again that the 1955 amendment of Section 117.170 was a positive recognition by the legislature that the section before amendment, in the legislature's opinion, resulted in an inequitable distribution of the cost of judges and clerks serving in Kansas City at general elections at which the city submitted local propositions, and, as we see it, the amendment was for the very purpose of changing that situation.

■ Appellant, as Point VI of its "Points and Authorities", states, "To Hold the Taxpayers of Jackson County Liable for the Entire Cost Would Be Violative of Their Constitutional Rights." The record demonstrates that no constitutional question was raised in the lower court, either in the pleadings, the evidence, or in defendant's motion for new trial. No constitutional question having been mentioned in defendant's motion for new trial, none is here for appellate review. State v. Powers, 350 Mo. 942, 944, 169 S.W. 2d 377, 378[6]. A brief may not supply deficiencies in a motion for new trial. State v. Davis, Mo., 251 S.W. 2d 610, 616[5-7].

We are of the opinion, that the provisions of Section 117.170, as they existed in November 1952, were applicable to instant facts, and that therefore Jackson County was liable to pay the entire compensation for judges and clerks serving in Kansas City at the November 4, 1952, general election. It follows that the trial court correctly ruled that the warrants in question were, valid and that plaintiff should recover their face amounts from defendant.

· ■ Intervenor-respondent's motion to dismiss the appeal (taken with the case) on the ground that appellant's brief violated Supreme Court Rule 1.08 is overruled.

The judgment is affirmed. *Van Osdol* and *Holman, CC.*, concur.

PER CURIAM:—The foregoing opinion by COIL, C., is adopted as the opinion of the court. All the judges concur.