Harry F. SCHNEIDER, Plaintiff,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant, Third-Party Plaintiff-Appellant,

v.

SODEMANN HEAT AND POWER COMPANY, a Corporation, E. O. Dorsch Electric Company, a Corporation, and Woermann Construction Company, a Corporation, Third-Party Defendants-Respondents.

No. 32213.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1967.

Motion for Rehearing or for Transfer to Supreme Court Denied March 17, 1967.

Strubinger, Wion & Burke, by Donald K. Davis, St. Louis, for appellant Southwestern Bell Tel. Co.

Louis W. Riethmann, Mueller & Riethmann, St. Louis, for respondent Sodemann Heat & Power.

Evans & Dixon, William Wallace Evans, St. Louis, for respondent Woermann Const. Co.

CLEMENS, Commissioner.

There were two separate trials in this case. Plaintiff Harry F. Schneider worked for the Sodemann Heat & Power Company as a steamfitter. He sued Southwestern Bell Telephone Company and recovered $10,000 for injuries from an electrical shock received while installing an air-conditioning register in Bell's downtown office building. (See Schneider v. Southwestern Bell Telephone Co., Mo.App., 354 S.W.2d 315.) In the present phase of the action, Bell as

third party plaintiff sued three contractors as third party defendants to recover $14,465.65 for Schneider's judgment, interest and litigation expenses. The trial court, sitting without a jury, found the issues against third party plaintiff Bell, and it appeals.

We digress to relate documentary evidence concerning the first trial. In the trial of this third party cause the court received in evidence the trial transcript and this court's opinion in Schneider's case against Bell. The issues finally adjudicated in the first trial are established by the submission, the verdict and the judgment against Bell and in favor of Schneider. His verdict directing instruction submitted Bell's duty to exercise ordinary care to furnish Schneider a safe place to work. By its verdict for Schneider under this instruction the jury found Bell negligent in permitting the partially bare wire to be placed on the floor of room 604, and also negligent in failing to warn Schneider of the presence of the wire. On Bell's appeal (354 S.W.2d 315) we affirmed, holding Schneider was Bell's invitee and Bell had a non-delegable duty to afford him a safe place to work and to warn him of latent danger.

Bell's points relied on here are that (1) its separate contracts with the third party defendants make them liable to Bell as indemnitors, and (2) under the evidence the third parties' liability as indemnitors is implied in law. As noted later, we question whether these points are preserved for review because of Bell's failure to raise them in its after-trial motion.

In its third party petition Bell alleged it was only passively negligent, but that the three contractors were actively negligent "in the placing of bare temporary wire at random on the floor" of the room where Schneider was working.

We summarize the evidence: Bell made plans to install an air-cooling and heating system in its office building. The plans called for a central air-conditioning system connected by tubing running through the floors and walls to registers in each room. The registers were about 5' x 4' x 1' and weighed just under a hundred pounds each. Bell contracted separately with the third party defendants to install the system. Briefly, Sodemann Heat & Power Company was to install the tubing and connect it to registers in each room; E. O. Dorsch Electric Company was to do the electrical work necessitated by the installation; and Woermann Construction Company was to do the carpentry work.

Bell relies on three contract clauses: By Article 9 of the Sodemann contract, titled "Sub-Contracts," Sodemann was responsible for general management of the building and had directing authority over the performance of subcontracts. (The evidence, however, showed separate contracts between Bell and the three contractors, and no subcontracts by Sodemann.) By Article 35 of the Sodemann, Dorsch and Woermann contracts, each contractor had a duty to inspect and report to Bell's architect any defect that would interfere with the work of any other contractor. By Article 12 of the contracts, each contractor agreed to take necessary precautions for the safety of all contractors' employees. No contract clause required any contractor to indemnify Bell for injuries to employees.

The evidence described several steps in the usual installation process: Sodemann would drill holes in the wall and the floor of a room to expose the tubing where registers were to be attached. Sometimes this drilling severed electric wires; when it did Dorsch would string temporary wiring in the room. (This wiring was necessary to let Bell's radio technicians continue using the electrical equipment in the room.) The temporary wiring would lie on the floor or be clipped to the baseboard. Sodemann's foreman Grassmuck would mark the floor where the register was to be connected and the register would be put in the room to be measured by Woermann, who would cut out sections of the baseboard to fit the register. Last, Sodemann would place the register

against the wall and connect it with the exposed tubing. These steps did not always proceed in that order; sometimes Woermann would cut out the baseboard before Dorsch had installed temporary wiring. So much for the general installation method.

The immediate cause of Schneider's injury is clear; who produced that cause is vague. On the day he was hurt Schneider went to room 604 to connect a register. Holes had been drilled in the floor, severing electrical wires; temporary wiring had been strung across the room. The baseboard had been cut out and for two days the register had sat on the floor within a few inches of the wall. Unknown to Schneider, a corner of the register was resting on a section of the temporary wiring at a point where it was not fully insulated. When Schneider touched the register he got the electric shock. This was the dangerous condition that caused Schneider's injury.

As said, the evidence is vague about who caused the dangerous condition. Room 604 was being used by Bell's radio technicians and also by the three contractors' workmen. Dorsch's electrician Intagliata did temporary wiring on the sixth floor but did not recall room 604. When Sodemann's foreman Grassmuck came into room 604 two days before the accident, temporary wiring lay on the floor; but the baseboard had not yet been cut out to receive the register, so Grassmuck marked an "X" on the floor where it was to be installed. Two days later Grassmuck noticed the register had been put in room 604 and the baseboard had been cut out. He did not notice whether the register was sitting on the temporary wiring. Grassmuck sent Schneider and a helper to room 604 to position and connect the register. When they got there the register sat a few inches from the wall where it was to be installed. The room was dark and Schneider did not see any wiring on the floor. He touched the exposed tubing with one hand and the register with the other. That was the last he remembered.

After Schneider's injury his helper, Charles High, went back to inspect room 604. The temporary wiring was clipped to the baseboard except along the wall where the baseboard had been cut out; there the wiring lay on the floor, partly under the register. At that point the wire had been spliced and taped, but an inch or two of the insulation was jagged and the wire exposed. This was the evidence. It was not shown whether the wire had been left bare by the electrician, or made bare later by placing the register on the wire, or made bare still later by someone's moving the register after it had been placed atop the wire.

After taking the case under advisement, the trial court found Bell had "failed to produce sufficient evidence to cause the Court to believe the proposition necessary to support its claim against any third party defendant, and that the Court is unable to form a belief as to any of the contentions made against the third party defendants without indulging in either guesswork or speculation." The court found the issues against Bell and dismissed its petition with prejudice. Bell filed an after-trial motion asking alternatively for judgment or a new trial.

Before we consider the points in Bell's brief we must decide whether Bell's after-trial motion, because of its generality, has preserved the points for review.

Two rules limit our review: Disregarding inapplicable exceptions [1], Civil Rule 79.03 declares allegations of error must be presented to the trial court in an after-trial motion, and *general* allegations of error

1. Under Civil Rule 79.03, V.A.M.R., it is not necessary in a court-tried case to file an after-trial motion to preserve questions of (1) the court's jurisdiction over the subject matter, (2) the sufficiency of the pleadings to state a claim or defense, or (3) the sufficiency of the evidence to support the judgment.

suffice only if *specific* objections were made during trial. Civil Rule 83.13(a) declares we shall consider only those allegations of error that were presented to the trial court. These were the grounds of Bell's after-trial motion:

"1. Said verdict is against the weight of the evidence.

"2. Said verdict is against the law and the evidence and the law under the evidence.

"3. That the Court has overlooked evidence sufficient to cause the Court to believe the proposition of the plaintiff and sufficient to support its claim against said defendants.

"4. That the Court has incorrectly interpreted the law as to the evidence adduced by the plaintiff, and if the law were correctly applied the plaintiff would be entitled to certain inferences and presumptions, and under such inferences and presumptions, the evidence would be sufficient to cause the Court to believe the proposition of the plaintiff so the Court could form a belief as to the contentions of plaintiff against said defendants without indulging in guesswork and speculation."

Grounds 1 and 2 are patently general. Ground 3 is an enlarged restatement of ground 1. Ground 4 is a wordy expansion of ground 2. Individually and collectively these grounds are utterly void of any specific allegation of error. Nor do they remotely resemble the points relied on in Bell's brief.

 The dual purpose of an after-trial motion is stated tersely in Fruit Supply Co. v. Chicago, B. & Q. Ry. Co., Mo.App., 119 S.W.2d 1010[4]: "The office of a motion for a new trial is to gather together the rulings complained of as erroneous, and solemnly and formally present them, one by one, in black and white to the judge in order that he have a last chance to correct his own errors without the delay, or expense, or other hardships of an appeal. This much is required. Less does not preserve the rulings for review." This is a well established principle of our law of trial and appellate procedure. Lloyd v. Garren, Mo., 366 S.W.2d 341 [6, 7].

 This principle requires that the grounds of an after-trial motion be specific, not general; and deficiencies in an after-trial motion cannot be supplied by appellant's brief. Civil Rules 79.03 and 83.13 (a) so declare. And see Ayres v. Keith, Mo., 355 S.W.2d 914 [1, 2], and Layson v. Jackson County, 365 Mo. 905, 290 S.W.2d 109 [5]. For cases holding that assignments similar to Bell's preserve nothing for review, see 2A Mo.Digest, Appeal & Error ⊕302.

 Nothing has been preserved for review, so we must affirm the judgment. We have considered Civil Rule 79.04, V.A.M.R., declaring that plain errors affecting substantial rights may be considered on appeal even though defectively preserved for review if manifest injustice or miscarriage of justice has resulted. We find no reason here to apply the rule.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.