STATE of Missouri ex rel. FORT ZUMWALT SCHOOL DISTRICT et al., Relators-Respondents,

v.

Francis DICKHERBER, Auditor of St. Charles County, St. Charles, Missouri, Respondent-Appellant.

No. 60648.

Supreme Court of Missouri, En Banc.

Feb. 13, 1979.

Linda S. Robinson, Ronald L. Boggs, St. Charles, for respondent-appellant.

Gerald R. Ortbals, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for relators-respondents.

SIMEONE, Judge.

## I.

This is an appeal by appellant, Francis Dickherber, the auditor of St. Charles County from a writ of mandamus entered on May 31, 1977 by the circuit court of St. Charles County commanding the appellant to countersign checks or warrants issued by the treasurer or collector of St. Charles County for the payment of interest on school tax moneys collected by the county. Because the appeal involves the construction of the revenue laws of this state, we have jurisdiction. Art. V, § 3, Mo.Const. For reasons stated below we affirm the judgment of the circuit court.

## II.

This proceeding has a long history and involves an interpretation of law relating to the payment of interest on school tax moneys received and deposited by the proper officials of St. Charles County. The precise issue is whether the interest on school tax moneys deposited in authorized depositaries should be paid to the treasurers of various school districts in the county or whether such interest should be credited to the general revenue fund of the county.

This proceeding began on July 18, 1974. On that date relators, various school districts including Fort Zumwalt District R–2 and the treasurer thereof, filed a petition for a writ of mandamus against the collector and treasurer of St. Charles County in the circuit court of St. Charles County. Relators sought mandamus against Paul F. Feurestein, collector of the county and Loretta Debrecht, treasurer. Respondent here, Francis Dickherber, was not made a party to that proceeding. Relators alleged that each corporate relator is a six-director school district maintaining a system of public schools in the county. Relators alleged that under appropriate statutes, §§ 165.071, 165.081, and 110.150[1], RSMo 1969, it was the duty of the treasurer and collector to forward to the respective treasurers of the school districts the interest on school tax moneys collected and invested by them. Demand had been made to forward such interest to the relators but the collector and treasurer failed and refused to do so. Relators prayed that the circuit court issue its writ of mandamus commanding the treasurer and collector to "forthwith deliver to each Treasurer-Relator interest earned on tax moneys received by Respondents in behalf of each Relator-School District . . . ." Respondents answered and relied upon § 52.360, RSMo 1969[2] contending that such interest "shall go to the general revenue fund of the County." Respondents contended that it is the duty of the collector to transfer interest on all funds to the credit of the general revenue fund of the county.

On August 29, 1974 the circuit court made its alternative writ absolute and ordered and enjoined respondents to pay to relators school districts the interest earned on all school tax moneys received and invested by them. That order was appealed to this court, but upon motion of the relators-respondents, the appeal was dismissed on October 13, 1975. The writ issued by the circuit court against the collector and treasurer then became final.

Subsequently, on February 19, 1976, relators filed a petition for a writ of mandamus against respondent-appellant Francis Dick-

---

1. Section 110.150 was amended in 1971, but not in a manner affecting this proceeding. We shall hereafter refer to § 110.150, RSMo Supp. 1975.

2. Section 52.360 was amended in 1973 but not in a manner affecting this proceeding. We shall hereafter refer to § 52.360 as amended, RSMo Supp.1975.

herber, the auditor of St. Charles County. In this petition relators school districts and treasurers of such districts alleged that under the law relators were entitled to interest, that a previous writ had been issued against the collector and treasurer but that respondent has failed or refused to sign warrants and prayed the circuit court to issue its writ of mandamus against respondent Dickherber to "perform all acts necessary, including the countersigning of all warrants," and to deliver to the relators the interest on tax money received on behalf of each school district. Respondent filed his return relying on § 52.350, and after the pleadings joined issue, the circuit court, on May 31, 1977, issued its writ of mandamus against the auditor, Mr. Dickherber.

Two affidavits were also filed. One affidavit was filed by the present collector of St. Charles County, Jim Primm. He stated that to the best of his knowledge all school moneys collected by the county collector's office during his term have been paid to the treasurer of each six-director school districts as provided in § 165.071. He further stated that at no time during his term had he paid school moneys to the county, treasurer or her office.

The other affidavit was filed by Loretta M. Debrecht, treasurer of the county. She stated that none of the "school monies" collected by the collector's office during her terms in office have been paid to her as treasurer of St. Charles County. By stipulation it was agreed that the county collector's affidavit that all school moneys have been paid to the treasurers of the school districts refers only to principal and not to interest.

The writ issued on May 31, 1977 by the circuit court, and which is the subject of this proceeding recited the allegations of the petition that (1) each relator is a six-director school district and the treasurer thereof, (2) that by a writ of mandamus issued on August 29, 1974, the county collector and treasurer were ordered to deliver the interest earned on all school tax moneys received and invested and that such previous writ is a final judgment, (3) the county

collector and treasurer have attempted to comply with that writ of mandamus but "have been thwarted by the failure and refusal of Respondent [auditor] to countersign warrants for the payment of the interest earned on school tax moneys, (4) pursuant to §§ 165.071, 165.081 and 110.150, it is the "clear, unequivocal and specific duty of the St. Charles County Collector and Treasurer to pay at least monthly to the treasurer of the School Board of all six-director districts all moneys, including the interest on the school funds and, pursuant to Sections 52.370 and 55.160, RSMo., 1969, [sic] it is the duty of the St. Charles County Auditor to countersign any checks and warrants for the aforesaid payments;", (5) relators have made demands on the auditors to pay interest over to the treasurers of the school districts but that he has refused to "countersign" the warrants, thereby obstructing the treasurer and collector of the county from performing their duties and complying with the earlier writ of mandamus, and (6) that such conduct is arbitrary, capricious and unreasonable. The writ then commanded and ordered the auditor to:

".   .   . [A]ffix your signature to whatever checks or warrants have been issued and to whatever checks or warrants may in the future be issued by the Treasurer or Collector of St. Charles County for the payment of interest on school tax moneys and to perform whatever other acts may be required of you to accomplish the delivery of each Treasurer-Relator, the interest on all school tax moneys."

The auditor appealed that judgment to the Missouri Court of Appeals, St. Louis District but upon motion that court transferred the cause here because of jurisdiction.

### III.

On this appeal, the appellant Dickherber makes three points: (1) the court erred in issuing the writ of mandamus commanding him to countersign warrants or checks for payment of interest on school funds to be delivered to the relators because the trial

court "misconstrued" §§ 165.071, 165.081, RSMo 1969 and 110.150, RSMo Supp.1975 as being applicable to the payment of interest on school funds to the relators and that the applicable statute rather is § 52.360, RSMo Supp.1975; (2) the court erred in issuing the writ commanding him to countersign warrants or checks because the court lacked jurisdiction in the earlier writ against the collector and treasurer since relators failed to name the appellant-Dickherber as a necessary party as required by Rule 52.04(c) thus making the prior writ "null and void" as against appellant, and (3) the trial court

erred in issuing the present writ of mandamus against him because the court lacked jurisdiction since the relators in this proceeding failed to join the collector of St. Charles County in violation of Rule 52.04.

The gist of the appellant-auditor's argument as we understand it is twofold. First, the governing and applicable statute dispositive of this proceeding is § 52.360 [3] because it "designates that the interest on all funds deposited by the collector is to go to the general revenue fund" and not to the school districts.[4] Second, he contends that §§ 165.071 [5], 165.081 [6] and 110.150 [7] do not

3. "*52.360.*—The county collector, in all counties of the first class not having a charter form of government and in all counties of the second class, shall deposit each day in the depositaries selected by the county for the deposit of county funds, all money received by him as county collector during the day previous, and make a daily report thereof to the county auditor, as provided in section 55.190, RSMo. The interest on all money deposited by the county collector shall be computed upon the daily balances of the deposits, and all of the interest shall be paid and turned over to the county treasurer at the time and in the manner that the monthly settlement and payment are made by the collector, *and the interest shall go to the general revenue fund of the county.*" (Emphasis added).

4. Under the statute the interest deposited by the collector is to be paid to the county treasurer and the interest "shall go to the general revenue fund of the county."

5. "*165.071.*—1. At least once in every month the county collector in all counties of the first and second classes and the township collector in counties having township organization shall pay over to the treasurer of the school board of all six-director districts all moneys received and collected by him to which the board is entitled and take duplicate receipts from the treasurer, one of which he shall file with the secretary of the school board and the other he shall file in his settlement with the county court.

2. The county collector in counties of the third and fourth classes, except in counties under township organization, shall pay over to the county treasurer at least once in every month all moneys received and collected by him which are due each school district and shall take duplicate receipts therefor, one of which he shall file in his settlement with the county court. The county treasurer in such counties shall pay over to the treasurer of the school board of six-director districts, at least once in every month, all moneys so received by him to which the board is entitled. Upon pay-

ment he shall take duplicate receipts from the treasurer of the school board, one of which he shall file with the secretary of the school board, and the other he shall file in his settlement with the county court."

6. "*165.081.*—The county treasurer shall pay over to the treasurer of each six-director school district any state or county school moneys received by him to which the district is entitled, at least once in every month and take duplicate receipts from the treasurer one of which he shall file with the secretary of the board, and the other he shall file in his settlement with the county court."

7. "*110.150.*—1. The county court, at noon on the first day of the May term in each odd-numbered year, shall publicly open the bids, and cause each bid to be entered upon the records of the court, and shall select as the depositaries of all the public funds of every kind and description going into the hands of the county treasurer, and also all the public funds of every kind and description going into the hands of the ex officio collector in counties under township organization, the deposit of which is not otherwise provided for by law, the banking corporations or associations whose bids respectively made for one or more of the parts of the funds shall in the aggregate constitute the largest offer for the payment of interest per annum for the funds; but the court may reject any and all bids.

2. The interest upon each fund shall be computed upon the daily balances with the depositary, and shall be payable to the county treasurer monthly, *who shall place the interest on the school funds to the credit of those funds respectively,* the interest on all county hospital funds and hospital district funds to the credit of those funds, the interest on county health center funds to the credit of those funds and the interest on all other funds to the credit of the county general fund.

3. The county clerk shall, in opening the bids, return the certified checks deposited with

govern this proceeding. He argues that since, under § 165.071 the collector in a second class county, unlike the collector in a third and fourth class county, pays school moneys directly to the school board and pays no school funds to the county treasurer and the treasurer receives no school funds from the collector, § 110.150 dealing with the county treasurer crediting interest on school funds to those funds is not applicable. Section 165.081 is not governing since that section deals with the county treasurer. Therefore all these sections can be harmonized and under recognized principles of law, the proper section to apply is § 52.360. He makes much of the fact that § 165.071 makes a distinction between the procedure of paying school funds in first and second class and third and fourth class counties.

As to his second point, appellant argues that the trial court erred in basing this writ against the auditor on the prior one filed against the collector and treasurer because the appellant was not named a party. He contends that the original writ was a nullity because the court lacked jurisdiction in that the appellant was a necessary or indispensable party under Rule 52.04 and that such rule is applicable to mandamus proceedings.

The relators-respondents, on the other hand contend that the doctrine of res judicata is applicable to the appellant because he is bound by the prior final judgment in mandamus. Relators argue that there is a sufficient identity of parties because of virtual representation and in cases of governmental bodies, its officers, board and commissioners form a single entity with respect to the application of the rule of res judicata.

As to the substantive issue, relators argue that § 52.360 is a general statute referring to "all money" received by the county collector and the interest thereon which shall go to the general revenue fund. On the other hand § 110.150(2) is a specific statute which directs interest on school funds and certain other funds to be credited to those

funds respectively. Under well settled principles of statutory construction the more specific law prevails over a general one. They conclude by contending that no distinction should exist between first and second class counties and third and fourth class counties so that in the former the school boards would be deprived of interest whereas in the latter they would be entitled to such interest.

## IV.

Despite the argument of the appellant-auditor we believe and hold that the trial court did not err in issuing the writ and that the interest on deposited school tax funds should go to the respective treasurers of the relator school districts rather than to the general revenue fund of St. Charles County. Although the various statutes are not as clear as they could be, § 110.150(2) is specific that the interest on "each fund" shall be placed to the credit of school funds.

■ First, § 52.360 is a general statute relating to money received by county collectors in second class counties. Although § 165.071, subsection 1 requires the county collector in a second class county to pay over to the treasurer of the school board of six-director districts, all moneys to which the board is entitled, we believe that section must be read in conjunction with § 110.150, subsection 2 which specifically authorizes interest on school funds to be credited to those funds. A specific statute prevails over a general one. *Laughlin v. Forgrave,* 432 S.W.2d 308 (Mo. banc 1968); *Layson v. Jackson County,* 365 Mo. 905, 290 S.W.2d 109 (1956); *Veal v. City of St. Louis,* 365 Mo. 836, 289 S.W.2d 7, 12 (1956).

■ It has been said that effect must be given to every clause and section of a statute so that one section will not conflict or destroy another. *State v. Morris,* 358 Mo. 1170, 219 S.W.2d 359, 362 (1949). Statutes must be read in pari materia and, if possible, given effect to each clause and provision. Where one statute deals with a sub-

him to the banks whose bids are rejected, and on approval of the security of the successful

bidders return the certified checks to the banks whose bids are accepted." (Emphasis added).

ject in general terms and another deals with the same subject in a more minute way, the two should be harmonized if possible, but to the extent of any repugnancy between them the definite prevails over the general. *Laughlin v. Forgrave,* 432 S.W.2d at 313; *Layson v. Jackson County,* 290 S.W.2d at 111. Section 110.150, subsection 2 specifically governs the disposition of interest on school tax funds. That section deals with the more particular matter of interest on general funds.

Second, appellant contends that § 110.150 is applicable to the county treasurer and not the county collector so that the county treasurer under that section is to credit the interest on school funds to those funds.

However, § 110.150 can be interpreted to govern the credit of school board interest to the school board funds. Under subsection 2 of 110.150, RSMo Supp.1975, the interest of "each fund shall be computed upon the daily balances with the depositary, and shall be payable to the county treasurer monthly, who shall place the interest on the school funds to the credit of those funds respectively, . . . ." "Depositary" in subsection 2 refers to subsection 1 of § 110.150, where the county court "shall select as the depositaries of all the public funds of every kind and description going into the hands of the county treasurer, . . . ." Section 52.360 requires the county collector in second class counties to deposit "in the depositaries selected by the county" all money received by him as county collector. Because subsection 2 of § 110.150 deals with the interest on "each fund" upon the daily balances "with the depositary" and not specifically to funds "going into the hands of the county treasurer" (subsection 1, § 110.-150), "each fund" may be construed to mean all funds including the county collector's funds which are to be deposited "in the depositaries selected by the county" under § 52.360. Thus construed, § 110.150 can be interpreted as requiring that the interest on school funds be placed to the credit of those funds.

Furthermore, we deal here with interest on deposited school funds. We believe that §§ 52.360, 110.150 and 165.071 may be harmonized so that the interest on school funds are to be paid to the school boards under § 110.150, even though under the affidavits the treasurer of the county stated none of the school moneys have been paid to her as treasurer of the county. Section 110.150 specifically deals with specific funds. We believe that § 110.150 may well be applicable so that interest on school funds be placed to the credit of those funds. Section 110.150 can be harmonized with § 165.071 so as to mean that the interest on each fund going into the hands of the county treasurer be paid to the county collector who, pursuant to § 165.071, shall pay to the treasurer of the school board" the interest received by him to which the board is entitled.

Third, the resolution we reach requiring the interest on deposited school tax moneys to be paid to the treasurer of the relators school districts permits equal treatment of all counties and avoids unequal distribution of interest on school funds among the various counties. There is no logical reason to require interest on school moneys to be paid to the school boards in third and fourth class counties and not to second class counties mentioned in § 165.071, subsection 1. Nor is there any policy reasons to so discriminate.

■ Fourth, the resolution we make comports with the general principle that the interest on public funds designated for a specific purpose follows those funds in the absence of an unequivocal legislative expression otherwise. See *annot.,* 143 A.L.R. 1341, 1342 (1943); *State Highway Commission v. Spainhower,* 504 S.W.2d 121 (Mo. 1973); *Pomona City School Dist. v. Payne,* 9 Cal.App.2d 510, 50 P.2d 822 (1935). In *Pomona,* the court expressed the principle in terms of the applicability to school funds. The issues were similar to the present case, and involved the question whether the interest on school funds was to go to the county or to the school district. In the course of the opinion the court stated:

"We are also confronted with the primary law that interest is an accretion or increment to the principal fund earning

it, and unless lawfully separated therefrom becomes a part thereof. . . . This was the common-law rule, and unless the depositary acts clearly demonstrate an intention to deprive school districts of such common-law right to interest accruals, they should retain such interest." 50 P.2d at 825. *See also State Highway Commission v. Spainhower, supra.*

■ We therefore conclude that based upon statutory interpretation and public policy that interest on deposited school funds are payable to the treasurer of the six-director school districts and that the trial court did not err.

■ Because of the disposition we make on the substantive and central issue it is unnecessary to fully explore the other issue raised by the parties relating to the res judicata and binding effect of the earlier writ of mandamus on the appellant auditor and whether the trial court lacked jurisdiction to issue the prior writ of mandamus because the appellant was not made a party in an alleged violation of Rule 52.04. Suffice it to say that (1) we do not believe the appellant was a necessary or indispensable party to the previous writ of mandamus and did not come within the purview of that rule—see discussion in *State ex rel. Emcasco Ins. Co. v. Rush,* 546 S.W.2d 188, 195–196 (Mo.App.1977),—and (2) we do not believe, as respondents-relators contend, that the issues are res judicata as to the appellant because of the earlier writ against the collector and treasurer. The doctrine of "virtual representation" is applicable only when the interest of the represented and the representative are so identical that inducement and desire to protect the common interest may be assumed to be the same and if there is no adversity between them. *L___ v. R___,* 518 S.W.2d 113, 121 (Mo.App.1974).

### V.

We conclude that the judgment and order of the trial court should be affirmed.

The judgment is affirmed.

MORGAN, C. J., BARDGETT, DONNELLY, RENDLEN and SEILER, JJ., and FINCH, Senior Judge, concur.

WELLIVER, J., not participating because not a member of the Court when cause was submitted.