STATE of Missouri, ex inf. Dean G. DANKELSON, Prosecuting Attorney, Jasper County, Missouri, Respondent,

v.

Stephen HOLT, County Collector, Jasper County, Missouri, Appellant.

No. 22673.

Missouri Court of Appeals, Southern District, Division One.

June 22, 1999.

Ronald E. Mitchell, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for appellant.

Dean G. Dankelson, Pros. Atty., Jasper County, Joplin, for respondent.

CROW, Judge.

This is an appeal from a judgment of the Circuit Court of Jasper County in a quo warranto proceeding.[1]

David C. Dally, in his official capacity as Prosecuting Attorney of Jasper County, instituted the proceeding against Stephen Holt, County Collector of Jasper County.

Rule 98.02(a) provides that the party seeking relief in a quo warranto proceeding is relator, and the person against whom relief is sought is respondent. Consequently, in the trial court Dally was relator and Holt was respondent. However, as explained *infra*, the case has now reached this court by appeal taken by Holt. Rule 81.03 provides that the party appealing shall be known as the appellant, and the adverse party as the respondent. While this appeal was pending, Dally ceased to hold the office of Prosecuting Attorney of Jasper County and was succeeded by Dean G. Dankelson. Rule 52.13(d) provides that where a public officer is a party to an action in an official capacity and during its pendency ceases to hold office, the action does not abate and the successor is automatically substituted as a party. Consequently, this court substituted Dankelson, in his official capacity, for Dally as respondent in this court.

In an effort to prevent confusion regarding the parties, this opinion henceforth refers to Dankelson and his predecessor, Dally, as "Relator," and to Holt by his surname.

Relator maintained in the trial court that Holt forfeited his office by violating § 52.320.2, RSMo 1994. That statute, which has remained unchanged since January 1, 1988, reads:

> "In all counties of the first class not having a charter form of government the collector of revenue may enter into a contract with a city providing for the collection of municipal taxes by the collector. Any compensation paid by a city for services rendered pursuant to this section shall be paid directly to the county, or collector, or both, as provided in the contract, and all compensation, *not to exceed three thousand dollars annually from all such contracts*, allowed the collector under any such contract may be retained by the collector in addition to all other compensation provided by law." (Emphasis added.)

The parties agreed in the trial court that Jasper County is a county of the first class without a charter form of government and that Holt entered into a contract with the City of Joplin ("Joplin") and the Jasper County Commission ("Commission") whereby Holt collected real estate taxes for Joplin and received, as compensation from Joplin, a percentage of the money collected. The contract referred to in the preceding sentence is captioned "Cooperative Agreement"; it is henceforth referred to in this opinion as "the Agreement."

The trial court found that Holt's compensation from Joplin exceeded $3,000 in

---

1. Rule 98, Missouri Rules of Civil Procedure, governs quo warranto proceedings in circuit courts. The version of Rule 98 in force when this proceeding was instituted is the version in Missouri Court Rules, Vol. I (West Group 1998). References to Rules in this opinion are to that edition.

each of the years 1992 through 1998, and that Holt retained all such compensation. Citing § 52.430, RSMo 1994,[2] the trial court held Holt thereby forfeited the office of County Collector.

Holt brings this appeal from that judgment. The first of his three points relied on cites § 50.332, RSMo 1994. That statute, which has remained unchanged since 1982, reads:

"Each county officer in all counties except first class counties having a charter form of government may, subject to the approval of the governing body of the county, contract with the governing body of any municipality located within such county, either in whole or in part, to perform the same type of duties for such municipality as such county officer is performing for the county. Any compensation paid by a municipality for services rendered pursuant to this section shall be paid directly to the county, or county officer, or both, as provided in the provisions of the contract, and any compensation allowed any county officer under any such contract may be retained by such officer in addition to all other compensation provided by law."

Holt argued in the trial court that the Agreement was authorized by § 50.332 (quoted above) and that inasmuch as that section does not limit the amount of compensation a county officer may receive under such a contract, he could receive more than $3,000 per year from Joplin without forfeiting his office.

The trial court rejected Holt's contention. Emphasizing that the current version of § 52.320.2 took effect January 1, 1988, the trial court held that section took precedence over § 50.332 (which, as noted above, has remained unchanged since 1982), hence Holt was subject to the $3,000 per year limitation in § 52.320.2.

Holt's first point relied on reads:

"The trial court erred in finding that § 52.320.2 ... took precedence over § 50.332 ... and in entering judgment that ... Holt had forfeited the office of county collector under § 52.430 ... for receiving compensation other than allowed by law because all commissions received by ... Holt from ... Joplin were allowed by law pursuant to § 50.332 in that § 50.332 and § 52.320.2 are not in irreconcilable conflict, and can be harmonized. Specifically, § 50.332 and § 52.320.2 may be reconciled by reading § 50.332 to allow the collector to retain over $3,000 annually from contracts with a city for the collection of municipal taxes if such contracts are approved by the governing body of the county and by reading § 52.320.2 to allow a collector to retain up to $3,000 from any such contracts which are not approved by the governing body of the county."

Both sides cite *State ex rel. Fort Zumwalt School District v. Dickherber,* 576 S.W.2d 532 (Mo. banc 1979), which declares: "A specific statute prevails over a general one." *Id.* at 536[1]. However, the opinion refines that proposition, explaining:

"Statutes must be read in pari materia[3] and, if possible, given effect to each clause and provision. Where one statute deals with a subject in general terms and another deals with the same subject in a more minute way, the two should be

**2.** Section 52.430, RSMo 1994, which has remained unchanged since 1973, reads:

"No compensation shall be allowed or paid the collector of any county of the first class not having a charter form of government ... his deputies or assistants, except that and to those expressly provided for, and no amount shall be charged to the county or drawn out of the treasury for the services of any deputy or assistant which is not the exact amount due such deputy or assistant. The county collector and all his employees are forbidden, under penalty of forfeiture of office, to collect, charge or retain, directly or indirectly, any compensation other than that allowed by law."

**3.** Construed with reference to each other. Black's Law Dictionary 1270 (4th ed.1951).

harmonized if possible, but to the extent of any repugnancy between them the definite prevails over the general."

*Id.* at 536–37[2].

Both sides also cite *Laughlin v. Forgrave,* 432 S.W.2d 308 (Mo. banc 1968), which discusses the significance of the sequence in which statutes are enacted, stating: "Where the special statute is later, it will be regarded as an exception to, or qualification of, the prior general one[.]" *Id.* at 313[1].

The effect of the sequence in which statutes are enacted is also addressed in *St. Charles County v. Director of Revenue,* 961 S.W.2d 44 (Mo. banc 1998), cited by Holt. There, the Supreme Court proclaims that when two statutory provisions are repugnant, the later act operates to the extent of the repugnancy to repeal the first. *Id.* at 47. Yet, the opinion cautions: "[R]epeal by implication is disfavored, and if two statutes can be reconciled then both should be given effect." *Id.* at [2].

With those canons of statutory construction in mind, this court compares § 50.332 ("the older statute") with § 52.320.2 ("the newer statute").[4]

Both statutes ostensibly allow Holt to enter into a contract with a municipality to collect its taxes. However, each statute contains a proviso absent from the other.

The older statute requires Holt to obtain Commission's approval of any such contract. The newer statute requires no Commission approval.

The newer statute bars Holt from retaining more than $3,000 annually from the compensation "from all such contracts." The older statute does not limit the compensation Holt can retain.

Holt thus apparently had a choice in contracting with Joplin to collect its real estate taxes. He could—with Commission's approval—contract under the older statute and retain all compensation to which the contract entitled him, without any monetary limit, or he could—without Commission's approval—contract under the newer statute and retain all compensation to which the contract entitled him, so long as his compensation did not exceed the $3,000 annual limit imposed by that statute.

Obviously, three parties have to agree on a contract under the older statute: the municipality, the county officer, and the county's governing body. Presumably, requiring approval by the county's governing body ensures the county will benefit from the contract. The county officer will, of course, receive only such compensation as the county's governing body approves. Inferably, that safeguard was placed in the older statute to prevent a county officer from entering into a contract with a municipality for excessive compensation to the officer with no benefit to the county.

Only two parties have to agree on a contract under the newer statute: the municipality and the collector. However, the newer statute has its own internal safeguard against the collector receiving excessive compensation. The newer statute limits the compensation the collector can retain to $3,000 annually "from all such contracts."

There is another, and perhaps more subtle, safeguard in both statutes. The compensation to be paid by the municipality will be only the amount the municipality is willing to pay. Presumably, officials negotiating the contract for the municipality will make certain the contract is a cost-effective way for the municipality to collect its taxes and that the compensation the municipality pays to the county or to the collector, or both, is not excessive for the services the municipality receives.

■ Finally, and perhaps equally important, officials entering into such contracts

---

**4.** As reported earlier in this opinion, the older statute has remained unchanged since 1982; the newer statute took effect January 1, 1988.

will be accountable to the public.[5] The ballot box, fortified by a vigilant and credible news media, is a formidable weapon against public officials who make contracts that subvert the public interest.

Based on the above analysis, this court holds the older statute and the newer statute can be harmonized by recognizing that each authorizes a contract differing from the other.

Where a collector in a first class county without a charter form of government is to receive no more than $3,000 aggregate annual compensation from one or more municipalities for collecting municipal taxes, he can make a contract with the municipality (or municipalities) without approval by the governing body of his county. However, if the collector is to receive more than $3,000 aggregate annual compensation from one or more municipalities for collecting municipal taxes, his county's governing body must approve the contract.

The choice available to a collector in a first class county without a charter form of government by virtue of the older statute and the newer statute provides flexibility by allowing the collector, without the necessity of approval by his county's governing body, to contract with a municipality for collection of its taxes where the amount of the collector's compensation from the municipality will be within the relatively modest monetary limit of the newer statute. However, where the collector's compensation will exceed the monetary limit of the newer statute, the collector must contract under the older statute, obtaining approval by his county's governing body.

This court does not ignore Relator's observation that the older statute is general—it applies to all county officers—whereas the newer statute is specific—it applies to only collectors in first class counties without a charter form of government. Consequently, argues Relator, this court should hold the newer statute imposes a $3,000 aggregate annual compensation lid on collectors in such counties in all contracts with municipalities for tax collection, irrespective of whether the county's governing body approves the contract.

■ Had the newer statute contained a proviso requiring approval of the contract by the county's governing body (as the older statute does), Relator's argument would be persuasive. However, the absence of a requirement for approval of the contract by the county's governing body in the newer statute arguably indicates the General Assembly intended to grant collectors in first class counties without a charter form of government additional—but limited—authority in the newer statute, i.e., authority to contract with municipalities for tax collection without approval by the county's governing body when the collector's additional compensation would be within the monetary limit of the newer statute. This court must adopt that construction, as it is consistent with the fundamental admonition that if two statutes can be reconciled, both should be given effect. *St. Charles County*, 961 S.W.2d at 47[2].

Furthermore, Relator conceded in the trial court that if the Agreement had been made in any county in Missouri except a "first-class, non-chartered" county, Holt "would have been entitled to keep every cent that came under the contract." Thus, Relator acknowledges that a collector in a county of the second class such as Calla-

---

5. Evidently, the electorate of Jasper County perceived no evil in the Agreement. Relator's brief avers that in an "intervening election" during the pendency of this appeal, the voters returned Holt to the office of County Collector. Holt's reply brief confirms that averment. Where a statement of fact in one party's brief is conceded to be true in the ad-

versary's brief, this court may consider it as though it appears in the record. *State ex rel. Missouri Highway and Transportation Commission v. Sweeney*, 933 S.W.2d 908, 910[1] (Mo.App. S.D.1996); *State ex rel. King v. Sheffield*, 901 S.W.2d 343, 344[1] n. 2 (Mo. App. S.D.1995).

way[6] or Cass[7] could have made a contract like the Agreement without forfeiting his or her office.

The only justification offered by Relator for the above anomaly is that the General Assembly, in confining the newer statute to first class counties without a charter form of government, intended "to limit [a collector's] additional compensation in counties with the largest amount of revenue" or, as phrased by the trial court, "in those areas where the collector stood to gain the largest amount of money from contracting with the various cities within his or her jurisdiction."

This court finds no logic in that hypothesis, as it would theoretically allow collectors in second class counties to earn annual compensation exceeding that of collectors in first class counties without a charter form of government. Relator informed the trial court there are eleven counties of the latter type in Missouri.

■ This court is mindful of the trial court's finding that the compensation Holt received from Joplin increased his annual earnings as County Collector by seventy percent. Whether a statutory scheme allowing such a result is good public policy is not for this court to decide. As the Supreme Court of Missouri said more than sixty years ago: "The wisdom of legislation is not a matter for our determination." *State ex rel. Karbe v. Bader*, 336 Mo. 259, 78 S.W.2d 835, 840[13] (banc 1934). Put another way, it is not the province of the judiciary to question the wisdom underlying a statute, as that is a matter for the General Assembly's determination. *Batek v. Curators of University of Missouri*, 920 S.W.2d 895, 898–99[9] (Mo. banc 1996).

For the foregoing reasons, this court finds Holt's first point meritorious. This court holds that inasmuch as (1) the Agreement was made in strict compliance with the older statute, and (2) the compensation limit in the newer statute applies to

only contracts made pursuant to the newer statute, Holt's compensation from Joplin was not subject to the compensation limit in the newer statute. Consequently, all compensation Holt received from Joplin was allowed by law. That holding compels reversal of the judgment, hence this court does not reach Holt's two remaining points.

■ Nonetheless, one loose end remains. Relator maintains that inasmuch as Holt has regained the office of County Collector,[8] the issue of whether the trial court erred in holding Holt had forfeited that office is moot.

Holt argues otherwise, insisting that a reversal of the trial court's judgment will entitle him "to the income he would have received during the period from the date of wrongful ouster until the date he was returned to office through [the] intervening election." Furthermore, says Holt, he "reimbursed" Jasper County the amount he received in excess of $3,000 per year from Joplin, and his reputation and standing in the community were damaged by the ouster. Finally, according to Holt, the issue regarding the amount of compensation he may receive from a contract like the Agreement is likely to be raised again. Holt points out that an appellate court may decide an otherwise moot issue if it is of general public interest and importance, recurring in nature, and will otherwise evade appellate review. *Bratton v. Mitchell*, 979 S.W.2d 232, 235–36[7] (Mo.App. W.D.1998); *State ex rel. Missouri Cable Television Association v. Missouri Public Service Commission*, 917 S.W.2d 650, 652[3] (Mo.App. W.D.1996).

Because (according to Relator) there are eleven first class counties without a charter form of government in Missouri, the issue this court has decided in this opinion would have likely recurred had this court evaded it by invoking the mootness doc-

---

**6.** Callaway County is a county of the second class. Official Manual, State of Missouri 1997–1998, p. 755.

**7.** Cass County is a county of the second class. Official Manual, State of Missouri 1997–1998, p. 758.

**8.** Footnote 5, *supra*.

trine to dispose of this appeal. For that reason, this court eschewed that doctrine and decided the issue.

*Judgment reversed.*

PREWITT, P.J., and PARRISH, J., concur.

