Alicia **STIMAGE**, a Minor by John Stimage, Father and Natural Guardian, Plaintiff-Respondent,

v.

**UNION ELECTRIC COMPANY**, a Corporation, Defendant-Appellant.

No. 33795.

St. Louis Court of Appeals, Missouri.

Feb. 23, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied March 23, 1971.

Carter, Brinker & Doyen, Bernard C. Brinker, Clayton, for defendant-appellant.

Padberg, Raack, McSweeney & Slater, Edward P. McSweeney, St. Louis, for plaintiff-respondent.

SMITH, Commissioner.

This is an appeal from a judgment of $10,000 in favor of plaintiff in accord with the jury's verdict in a child dart-out accident. Defendant's attack on the judgment presents essentially two grounds: sufficiency of the evidence and excessiveness of the verdict.

In September, 1968, plaintiff Alicia Stimage, then almost six years old, ran across Short St. Louis street in the city of St. Louis and was struck by defendant's truck, operated by its employee, Victor J. Recupero, while acting in the course of his employment. Short St. Louis street is one leg of a triangle formed by Prairie Avenue, St. Louis Avenue and Short St. Louis at a point where St. Louis Avenue changes direction and angles off to Prairie. Short St. Louis is the straight line continuation of St. Louis Avenue and ends at Prairie. Recupero, operating a small pick-up or panel truck of defendant, was proceeding west on St. Louis Avenue, when he reached the intersection of Short St. Louis. He then proceeded westwardly on Short St. Louis and struck plaintiff who emerged from between parked cars on the south side of Short St. Louis and ran across that street.

In determining the sufficiency of plaintiff's case, submitted upon humanitarian failure to stop, we review the evidence in the light most favorable to plaintiff and give her all reasonable inferences which may be drawn from the evidence. We disregard defendant's evidence except to the extent it may benefit plaintiff.

Recupero testified, in the plaintiff's case that his truck was in good mechanical condition, that the brakes were all right. Immediately prior to the accident, and at the time the first child [1] became visible from between the parked cars the speed of defendant's truck was twenty miles per hour. Defendant's employee could make no estimate of the distance between the child and his truck when the first child became visible. At the time of impact his truck was almost stopped. In response to a question on direct examination—whether Recupero could give an estimate as to how far it was from the plaintiff when Recupero first saw her to the point of impact—the witness answered, "No. I seen the first child jump out from the car. That's when I started to stop."

On cross-examination by defendant the following testimony was given:

"Q As soon as you saw—you say you saw the first child come out, as soon as you saw that, did you apply your brakes? A Yes, sir.

"Q As quickly and as fast as you could? A Yes, sir.

"Q An emergency application? A right.

"Q Did your truck skid? A Yes, sir.

"Q And did it skid up to the point where there was a collision with Alicia? A Yes, sir."

Plaintiff's evidence of liability (aside from Recupero's testimony) consisted primarily of three photographic exhibits and the testimony of plaintiff's brother, Barry, ten years old at the time of trial and nine at the time of the accident. The photographs, taken shortly before trial, were views of the accident scene, with Barry standing in a different place on each photo. Barry testified that he was following behind his sister when she darted out into the street. She was the only child to enter the street until after the impact when Barry ran to her. He saw her at all times prior to and at the time of impact. He testified that the place he was standing in exhibit 1 was where his sister "began to cross the street." It depicts a spot seven feet from the curb [2] just to the street side and between two parked cars. His position in exhibit 2 was "where she got hit." That spot was seven feet from the north curb of Short St. Louis street, directly, or nearly so, across from his position in exhibit 1. His location in exhibit 3 was "where the truck was coming when she started to cross the street." That position was 114 feet from Barry's position in exhibit 2. The street at the point of impact was 35 feet 5 inches wide.

Defendant's attack on the sufficiency of the evidence to support liability is two-fold. First, it is contended that no evidence was adduced that the truck could have been stopped after the child became visible; and second, that plaintiff is bound by Recupero's testimony that when the child first became visible he made an emergency application of his brakes and could not stop his vehicle in time. These in turn.

The most favorable evidence to plaintiff places the truck 114 feet from the point of impact at the time the child became visible. The truck was moving at twenty miles per hour at that time. The brakes were "all right." The vehicle was a small pick-up or panel truck. Defendant's exhibits, taken shortly after the accident show the street to be dry and in normal

---

1. Recupero testified plaintiff was the last of three children to enter the street.

2. This and all other measurements referred to were made by the photographer and testified to by him.

condition for a city street. The appellate courts of this state have frequently held that although a court may not take judicial notice of the exact distance in which a vehicle may be stopped the court may take judicial notice that a vehicle traveling at a certain speed can be stopped within certain limits. It has been held that it is common knowledge that a vehicle traveling twenty miles per hour can be stopped in twenty to twenty-five feet (Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, apparently excluding reaction time); that a truck traveling twenty-five to thirty miles per hour can be stopped in much less distance than 130 feet (Crane v. Sirkin & Needles Moving Co., Mo.App., 85 S.W.2d 911); that an automobile traveling fifteen to twenty miles per hour could be stopped in less than ninety feet (Hildreth v. Key, Mo.App., 341 S.W.2d 601); that properly equipped automobiles traveling at twenty miles per hour can be stopped in less than fifty feet including reaction time (Losh v. Benton, Mo., 382 S.W.2d 617). See also Chawkley v. Wabash Ry. Co., 317 Mo. 782, 297 S.W. 20; Leavell v. Thompson, 238 Mo.App. 130, 176 S.W.2d 854. The courts of this state have also judicially noted that average reaction time is three-quarters of a second. Immekus v. Quigg, Mo.App., 406 S.W.2d 298 [2, 3]. At twenty miles per hour defendant's truck was traveling 29⅓ feet per second, and would have traveled approximately 23 feet during reaction time. It then had 91 feet in which to stop, nearly four times the distance judicially noted in Spoeneman v. Uhri, *supra*. There was nothing in the evidence requiring the jury to ignore the knowledge common to all that a vehicle such as defendant's could have been stopped in less than 114 feet. It was not necessary that there be evidence upon which to base an expert opinion of ability to stop within the distance available.

Defendant further contends that the testimony does not establish that plaintiff was 114 feet from defendant's truck when she became visible. This is based on the contention that Barry stated his position in exhibit 3 was "where the truck was coming when she started to cross the street." It is then contended that she did not become visible until she had passed the parked cars, some seven feet from the edge of the street. But in identifying his position in exhibit 1, Barry stated, "That's where she began to cross the street" and his position in that exhibit is to the north of the parked cars. The jury could properly conclude that when he referred to her starting to cross the street he had reference to a position on the street side of the parked cars, a position in which she was visible.

■ Defendant also contends that for judicial notice to be applicable, the fact to be judicially noted must be introduced in evidence. This contention fails to note the difference between judicial notice based upon common knowledge of mankind, and judicial notice based upon the availability of a fact in a record easily available to the court which by statute or court decision carries a presumption of reliability. In the latter category is the judicial notice to be taken of the court's own file dealt with in Randall v. St. Albans Farms, Inc., Mo., 345 S.W.2d 220, relied upon by defendant. The judicial notice with which we are dealing, however, is the notice which a court may take of those matters commonly known by mankind, and which a jury may properly consider in arriving at a verdict without independent proof of the fact.

■ Defendant also contends that the court erred when, in response to an objection by defendant's counsel during closing argument, it acknowledged that no evidence was introduced of exact stopping distance, but that the jury could utilize their own experience in this regard. Although categorizing this comment as an "oral instruction," defendant's brief attacks the court's conduct solely on the ground that it made an erroneous statement of law. The statement was simply a comment. No objection was made to it at the time and no request was made for any remedial action by the court. The issue is not pre-

served for appellate review. Earney v. Clay, Mo., 462 S.W.2d 672, filed February 8, 1971; Paige v. Missouri Pacific Railroad Company, Mo., 323 S.W.2d 753 [15]; Dorman v. East St. Louis Ry. Co., 335 Mo. 1082, 75. S.W.2d 854 [7].

Defendant also contends that plaintiff was bound by the testimony of Recupero that he attempted to stop his truck as soon as the child became visible but could not do so. We think this contention is disposed of by De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, wherein the court said: "The fact that plaintiff called defendant as a witness on behalf of plaintiff did not make all that defendant testified to conclusive on plaintiff. Plaintiff was not precluded from establishing her case by other testimony, even though it contradicted defendant's testimony. A party is only bound by the uncontradicted testimony of his adversary which he introduces." [5, 6].

Here there was evidence from which a jury could infer that defendant's driver had adequate distance to stop after plaintiff became visible. Furthermore, the testimony was not elicited by plaintiff. Recupero's statement on direct as to when he started to stop was unsolicited and unresponsive to the question asked. Defendant developed the matter on cross-examination. As stated in Neuhoff Bros. Packers v. Kansas City Dressed Beef Co., Mo.App., 340 S.W.2d 193, l. c. 196 [2]: "Plaintiff could only be bound, if at all, by Schmidt's testimony *as to matters about which plaintiff examined him.* * * * As to testimony given by Schmidt at the solicitation of defendant, he was defendant's witness and was subject to cross-examination and impeachment by plaintiff. * * *"

There was sufficient evidence to support plaintiff's submission of humanitarian failure to stop.

On the matter of excessiveness some additional facts are required. Following the accident plaintiff, who was not rendered unconscious, was taken to the hospital. She returned home shortly thereafter where she was "lazy-like." She sustained bruises on her legs, arm and forehead and was bleeding from her ear. She was taken the same day to a doctor's office where she began projectile vomiting and was thereafter confined to bed for two days. Following the accident, although normally an active child, plaintiff became very quiet and had occasions when she inexplicably fell off balance and walked into walls. She had headaches and moments when the room and bed seemed to move around her. Her doctor testified she had bulging tympanic membranes in the ear, abrasions and lacerations on her face, and spastic and swollen back muscles, indicating lumbar sprain. Her doctor diagnosed her head injury as a cerebral concussion with "severe injury to the brain or its appendages." By June of 1969 the doctor found plaintiff practically asymptomatic and her mother testified that by April plaintiff had no complaints and the mother noticed nothing unusual or abnormal thereafter. Plaintiff missed no school as a result of the accident, except for trips to the doctor.

Defendant refers us to Karnes v. Ace Cab Co., Mo.App., 287 S.W.2d 378, decided by this court in 1955 where remittitur reducing the verdict of $3500 to $2500 was ordered for a mild concussion. Besides the lapse of time since that decision, we also note that the court there pointed out that the medical evidence did not show any of the symptoms commonly found in cases where substantial damages had been awarded for brain damages. Included in the symptoms not found there were vomiting, bleeding and interference with gait—all present here. Additionally, present here are headaches, impairment of balance, increased intracranial pressure and edema of the brain. Although the doctor was unable to tell how much scarring of brain tissue had occurred in plaintiff, we think a rea-

sonable reading of his testimony indicates that some had occurred and this scarring would produce fibrous tissue—not regenerated brain cells.

■ Defendant's charge of excessiveness does not delineate whether the excessiveness claimed is such as to require reversal because of bias and prejudice of the jury, or is such as to be corrected by remittitur. As to the first, an appellate court will not determine bias and prejudice of the jury on amount of the verdict alone. See Mudd v. Quinn, Mo., 462 S.W.2d 757, opinion filed February 8, 1971. No other basis for making a determination of bias and prejudice is asserted. As to remittitur, the determination of the amount of damages is peculiarly the function of the jury and we will not disturb its verdict "unless the amount is so grossly excessive that it shocks the conscience of the court" (Rinderknecht v. Thompson, 359 Mo. 21, 220 S.W.2d 69; Brandt v. Thompson, Mo., 252 S.W.2d 339; Lindsey v. P. J. Hamill Transfer Co., Mo.App., 404 S.W.2d 397 [5, 6]) or "so manifestly excessive as to suggest interference" by this court (Mudd v. Quinn, *supra*). We also give due regard to the attitude of the experienced trial judge who personally observed the trial and let the verdict stand. Lindsey v. P. J. Hamill Transfer Co., *supra*. Although the verdict was substantial we cannot say it shocks our conscience or is manifestly excessive.

Judgment affirmed.

PER CURIAM.

The foregoing opinion by SMITH, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

BRADY, P. J., and WOLFE, J., concur.

DOWD, J., not participating.