Gerald **DOCKERY** et ux.,
Plaintiffs-Respondents,

v.

Anthony **MANNISI** and Lee McGraw,
Defendants-Appellants.

No. 43468.

Missouri Court of Appeals,
Eastern District,
Division One.

June 15, 1982.

Francis L. Kenney, III, Clayton, for defendants-appellants.

Robert L. Brown, Arnold, for plaintiffs-respondents.

KELLY, Chief Judge.

This is an appeal from a judgment of the Circuit Court of the County of Jefferson in a suit instituted in the Associate Circuit Court of said County by Gerald and Mary Ellen Dockery, hereinafter "respondents," against Anthony Mannisi and Lee McGraw, hereinafter "appellants," for damages in the amount of $5,000.00 plus costs, because appellants constructed a home for the Dockerys in "an improper manner ..." or

"breach of imply [sic] warranty [sic] inhabitability and quality ..." The appellants filed an Answer and a counter-claim for $285.31 plus interest and costs for goods provided the respondents over and above the contract price agreed upon by the parties for the construction of the house which is the subject of this action. The respondents requested a jury trial and, pursuant to §§ 517.630 and 517.520.2 RSMo.1978, the cause was certified to the presiding judge of the Circuit Court who thereafter assigned the cause to an Associate Circuit Judge for trial.

Following the jury trial a verdict was rendered for the respondents on their cause of action for $4000.00 and for Anthony Mannisi on his counter-claim for $250.00. A judgment was entered for respondents in the sum of $3750.00 plus costs, with interest from the date of judgment, June 30, 1980. This appeal followed.

The facts, viewed most favorably in support of the verdict of the jury, are that on or about September 23, 1977, the appellants conveyed a parcel of land located in Jefferson County, Missouri, by General Warranty Deed to the respondents. Prior thereto, on or about May 3, 1977, the appellants entered into a "Sales Contract" to erect a house on the same parcel they subsequently conveyed to the respondents in September, and according to this contract the house was to be completed in a "workmanlike manner."

When the "Sales Contract" was entered into the foundation of the house was already in place. Construction of the house proceeded. Closing on the house was initially scheduled for August 15, 1977, but when that date arrived and the house was not completed, the closing was postponed. Sometime in September, 1977, Mr. Dockery and Mr. Mannisi had some conversations during which Mr. Mannisi told Mr. Dockery that he could not guarantee the basement of the house because it had a "couple of cracks." Mr. Dockery advised Mr. Mannisi that he and his wife would, nevertheless, take the house if Mr. Mannisi would put drain tiles around the footing of the house and if Mr. Mannisi would sign a paper stating that he would install the drain tiles and come back after the closing and install storm windows which, although they had been ordered and were en route, had not yet arrived.

On September 26, 1977, Mr. Mannisi signed an agreement before a Notary Public wherein he agreed to "furnish and install drain tiles and storm windows" on the property "on or before October 14, 1977," contingent, however, upon receipt of $285.31 from the respondents for carpeting.

The plaintiffs occupied the house on October 1, 1977, and closed on October 3, 1977.

When they occupied the house the Dockerys encountered several defects which formed the basis of their claim. The drain tile and storm windows had not been installed, the kitchen window was cracked and did not fit properly, the electrical outlet covers were of the wrong size, the front door was warped and would not close properly, and there were plumbing leaks. In addition, the respondents found nail heads sticking up from the kitchen linoleum which was cut too short and did not meet the wall. The basement windows were sealed shut and there were some problems with wiring and joint-taping. Mr. Dockery testified that for the first three weeks of occupancy the hot water heater was virtually useless because the heating element was burned out. There was also a hole in the foundation where the water line entered the house which permitted water to leak into the basement of the home. Appellants remedied some of these problems for the respondents and the manufacturer of the hot water heater took care of the problem with that appliance. Respondents incurred out-of-pocket expenses of approximately $830.00 and Mr. Dockery alleged that he labored "many hours" fixing the electrical outlets and some 200 hours mopping up the water that had leaked into the basement. Appellant also maintained that the water leakage in the basement had caused rust damage to the furnace and that the sanitary sewer system was defective causing raw sewage to back into the basement when it rained.

According to the respondents the sales price of the property was $28,900.00. Mr. Dockery testified that the fair market value as of October 3, 1977, when the closing took place, was $23,000.00.

Appellants present six Points Relied On as grounds for a new trial. One ground is that the trial court erred in failing to grant their motion for a directed verdict at the close of plaintiffs' case. Having proceeded to offer evidence after their motion for directed verdict at the close of plaintiffs' evidence had been overruled, they waived their right to complain of the trial court's action in that regard. *Alexander v. Estate of Groves*, 618 S.W.2d 233, 236[3] (Mo.App.1981); see cases digested under Mo.Dig. Trial § 420.

A second ground expounded by appellants for reversal of the judgment is that the trial court erred in admitting into evidence respondents' Exhibit # 6—a sales contract—because there was no foundation laid nor a showing that it was the best evidence of the contract.

At trial respondent identified one document—"Exhibit No. 6"—a "carbon copy" of the sales contract for the house entered into with the appellants and a second document—a General Warranty Deed for the house and parcel of land on which it was constructed—that he and his wife purchased under the sales contract. This came in without objection. When, however, respondents sought to introduce the sales contract into evidence appellants objected on the ground that the document did not bear the signature of the sellers, that the best evidence would be the original of the document and no foundation had been laid to establish that the original wasn't available or where it was. Mr. Dockery then testified that he didn't know where the original was and the trial court received the exhibit into evidence "subject to further proving up."

It was then developed that the Dockerys signed the sales contract at the office of a real estate agency before they ever saw the appellants and at that time received a copy of the sales contract which the defendants had not, up to that time at least, executed.

It is an elementary principle of the law of evidence that the best evidence of which the case in its nature is susceptible and which is within the power of the party to produce, or is capable of being produced, must always be produced in proof of every disputed fact. The best proof of a writing is the writing itself. The mere fact that one's adversary is in possession of a writing containing the facts relevant to the issues in the case does not warrant the introduction of secondary evidence of its contents.

However, where a carbon copy is concerned, the rule is that carbon copies have the status of duplicate originals and hence are not within the scope of the best evidence rule. A carbon copy may be introduced into evidence without explanation of the non-production of the first, or "ribbon" copy, where signed by the parties or otherwise properly identified over an objection that it is not the best evidence. *Land Clearance for Redevelopment Authority v. Zitko*, 386 S.W.2d 69, 80[2] (Mo. banc 1964). The Sales Contract, Exhibit # 6, does not satisfy the "carbon copy" rule because it was not signed by the parties to the alleged contract. The trial court admitted the exhibit, as heretofore stated, "subject to further proving up."

Any error committed in receiving into evidence this copy of the Sales Contract was subsequently cured when, during cross-examination of Mr. Mannisi in the defendants' case, his trial counsel furnished respondents' trial counsel a document which Mr. Mannisi testified was the contract under the terms of which he built the house which is the subject of this litigation. He also identified a signature on the contract as a carbon copy of the signature of "Lee"—his co-defendant. This contract was marked as plaintiffs' Exhibit # 11 and received into evidence.

Exhibits 6 and 11 are carbon copies of a Sales Contract dated May 31, 1977, signed by the Dockerys, as purchasers of the plot of ground and providing for the construc-

tion of a "new 3 bedroom total electric home with family room," for $28,900.00. Each of the exhibits contains the statement "House to be completed in workmanlike manner." Handwritten on Exhibit No. 11 is "Seller to net $26,500." This notation does not appear on Exhibit # 6. The only other difference in the two is a statement with reference to carpet colors—"contractor to furnish samples" on Exhibit # 11.

Appellants argue that respondents never properly proved up the contract because respondents' Exhibit 6 was a copy signed by the Dockerys alone, does not indicate who the other parties are and nowhere in the transcript is there any testimony concerning execution of the document by any of the parties. However, Mr. Dockery testified concerning how their signatures were written on the contract and Mr. Mannisi identified Ms. McGraw's signature on Exhibit # 11 and admitted that it was the contract under the terms of which he constructed the house for the Dockerys.

Under these circumstances, the failure of respondents to comply with the niceties of the rules of evidence with respect to the contract were cured by the testimony concerning Exhibit # 11. Appellants were not prejudiced by receipt of Exhibit # 6 into evidence at a time when a sufficient foundation had not been laid for its admission.

We rule this Point against appellants.

■ Appellants next assert that the trial court erred in denying its motion for judgment notwithstanding the verdict. This motion was based upon appellants' contention that the respondents failed to prove the contract. Our ruling on the previous point, that the admissions of the appellant Mannisi that Exhibit # 11 was the contract on which the home was constructed made that exhibit admissible and cured any error in admitting Exhibit # 6 into evidence, disposes of this contention of the appellants. A motion for judgment n.o.v. presents the same issues as a motion for directed verdict at the close of the evidence: did the plaintiff make a submissible case? Rule 72.01(b); *Bennett v. North Brighton Townhouses, Inc.*, 588 S.W.2d 100, 103[5] (Mo.App.1979). In reviewing the trial court's ruling on this motion, and whether respondents made a submissible case, we consider the evidence in a light most favorable to the respondents and accept such evidence as true, giving respondents the benefit of all reasonable inferences reasonably drawn therefrom and we disregard appellants' evidence except insofar as it aids the respondents' case. *Braun v. General Motors Corp.*, 579 S.W.2d 766, 769[3] (Mo.App.1979). Viewed in this light we hold the trial court did not err in denying appellants' motion n.o.v.

Appellant also contends that the trial court misdirected the jury as to the proper measure of damages. The trial court submitted the question of damages under M.A.I. 4.02 authorizing the jury, if it found for the plaintiffs, to award them the difference between the fair market value of the home had it been built in a workmanlike manner and its fair market value as it was built and delivered to the respondents. Appellants assert that, under the facts of this case the proper measure of damages was the cost of repair, not the diminution of value, and therefore they are entitled to a new trial.

We hold there is no merit to appellants' contention, for the following reasons.

■ Appellants and respondents tried this case on the theory that diminution in value was the proper measure of damages. Appellants on several occasions objected to respondents' cost of repair evidence on the grounds that diminution of value was the proper measure of damages and therefore evidence of cost of repairs was not admissible. Having tried the case on that theory, appellants may not convict the trial court of error for submitting that issue to the jury. *McIlroy v. Hamilton*, 539 S.W.2d 669, 677[12] (Mo.App.1976).

Furthermore, appellants have not preserved this question for review. At the instruction conference appellants, in response to the trial court's inquiry whether there were any objections to the instructions submitted or to be given, replied "Not at this time."

Having failed to make specific objections to the instructions during the instruction conference, pursuant to Rule 70.03, to preserve error in the giving of instructions, appellants were required to set forth in their motion for new trial specific objections to the instructions they claim to be erroneous. Rule 78.07. Paragraph 9 of appellants' motion for new trial reads:

"The court erred in instructing the jury as to the amount of damages under instruction No. 8 as modified by the Plaintiffs in that it was not in compliance with Missouri Approved Instructions 4.02 in that it did not properly measure the damages and gave the jury a roving commission as to the amount of damages."

█ This allegation of error does not satisfy the requirement of Rule 78.07. While it states what the alleged error is, it does not state with specificity why it is erroneous, and therefore preserves nothing for review. *Bremer v. Mohr*, 478 S.W.2d 14, 18[8] (Mo.App.1972); *Belter v. Crouch Bros., Inc.*, 554 S.W.2d 562, 563[1] (Mo.App. 1977).

We therefore rule this Point against appellants.

█ Appellants' next claim of error is that the trial court erred in not granting their motion for new trial because the jury verdict was excessive and not based on substantive evidence. Appellants, in their motion for new trial, allege in paragraph 10, "The jury's verdict was not supported by any evidence." In paragraph 11, they allege, "The jury's verdict as to the amount of damages was not supported by any substantial evidence." Neither of these allegations preserves anything for review. Rule 78.07. *Hartley v. Matejka*, 585 S.W.2d 240, 241[1] (Mo.App.1979); *Wilcox v. Coons*, 241 S.W.2d 907, 917[25] (Mo. banc 1951). We believe this issue, if it had any merit, is not preserved for review.

The thrust of appellants' argument is that the amount of damages awarded respondents is excessive because it exceeds the cost of repairs borne by the respondents in correcting defects in the house constructed by the appellants.

█ The jury was instructed correctly, we believe, that the measure of damages to be awarded respondents, if any, was the "difference between fair market value of the home had it been built in a workmanlike manner and its fair market value as it was built and delivered to Plaintiffs." There was evidence that this difference was $5,900.00. The award, $4,000.00, was, in our opinion, not excessive and, if respondents' evidence was believed, supported by substantial evidence.

█ It is primarily the function of the jury to fix the amount of the damages, and the jury's determination should not be disturbed unless the amount is so grossly excessive that it shocks the conscience of the court. *Howard v. Lundry*, 591 S.W.2d 193, 201[25, 26] (Mo.App.1979); *Stimage v. Union Electric Company*, 465 S.W.2d 23, 28 (Mo.App.1971). We hold that the jury verdict in this case is not so grossly excessive as to shock the conscience of this court and is supported by substantial evidence. We rule this Point against appellants.

The next Point Relied On as grounds for a new trial is that the trial court erred in not granting appellants' motion for new trial because respondents verdict director, Instruction No. 7, failed to properly instruct the jury on the elements necessary for respondents to recover.

In the absence of any objection to this instruction, an M.A.I. 26.02, modified, we look at the appellants' motion for new trial to ascertain whether this objection was made therein. Paragraph 8 of the motion for new trial attacks this instruction as follows: "The Court erred in giving instruction No. 7 as modified by plaintiffs in that said instruction failed to properly instruct the jury on the elements of failing to construct the house in a workmanlike manner and was thereby prejudiced."

In their brief appellants argue that the error was in submitting respondents' case to the jury under M.A.I. 26.02 whereas, under the evidence, the proper submission would have been under M.A.I. 26.06 because the

existence and terms of the alleged contract were in dispute.

■ We do not believe the allegation of error as stated in appellants' motion for new trial complies with the requirement of Rule 78.07 in that it is not sufficiently specific to inform the trial court of the alleged error so that it could take appropriate action at that level to correct the error by the granting of a new trial. Furthermore, the allegation of error in respect to the instruction as stated in paragraph 8 of appellants' motion for new trial is failure to instruct on "the elements of failing to construct the house in a workmanlike manner." On appeal, however, appellants' argument is not directed to this ground, but takes the tack that because the terms of the contract were in dispute M.A.I. 26.06 was the appropriate instruction. This constitutes a change of direction and cannot be tolerated because raising this issue for the first time in the appellate court does not afford the trial court an opportunity to correct its own error.[1] *Hensic v. Afshari Enterprises, Inc.*, 599 S.W.2d 522, 526[6] (Mo.App.1980).

Finally, Mr. Mannisi testified that he built the house under the terms of the contract in evidence; and that contract required that the house be completed in a workmanlike manner. The primary issue in the case in light of Mr. Mannisi's testimony was whether the house was constructed in a workmanlike manner and there was a plethora of evidence that it was not.

We rule this Point against appellants.

Appellants' final claim for relief is that the trial court erred in not granting them a new trial because respondents' testimony revealed as a matter of law that they had not complied with a condition precedent in the September 26, 1977, agreement and were therefore not entitled to damages for the items set out therein.

In reviewing appellants' motion for new trial we find no allegation of this error.[2]

From appellants' brief we discern that their contention under this Point is that payment by respondents of $285.31 for carpeting to appellants was a condition precedent to appellants' performance of the contract to construct the house, and the failure of respondents to make this payment precludes their recovery of any damages incurred by any unworkmanlike construction, and therefore the jury should have been instructed to disregard any of respondents' testimony relative to damages occasioned by their failure to "install drain tile and storm windows on the property . . ."

The "September 26, 1977, agreement" referred to by appellants provided that Mr. Mannisi would "furnish and install drain tiles and storm windows" on the property "on or before October 14, 1977, contingent upon receipt of $285.31 due on carpets from Mr. & Mrs. Dockery . . ." According to Mr. Mannisi this amount was for carpeting over and above what he would normally install in a house. He also testified that he had never received payment of this amount and Mr. Dockery testified that he never made payment for the carpeting.

■ We conclude that this alleged trial error was not preserved for appellate review. However, even if it had been it would be without merit. The law does not favor conditions precedent and courts will not construe contract provisions to be such unless required to do so by plain unambiguous language or by necessary implication. *Kansas City Southern Ry. Co. v. St. Louis-S.F. Ry. Co.*, 509 S.W.2d 457, 460[1] (Mo. 1974); *Miran Investment Co. v. Medical West Building Corp.*, 414 S.W.2d 297, 304[15] (Mo.1967); 17 Am.Jur.2nd Contracts § 321, at 752.

1. There is nothing in this record on appeal evidencing oral argument was presented on appellants' motion for new trial nor that memoranda of law setting out argument along this line were filed with the trial court.

2. Paragraph 6 of said motion alleges: "The court erred in failing to preclude all testimony of the Plaintiffs concerning storm windows and drain fields in that Plaintiffs failed to show that they had complied with the conditions precedent of the payment of $285.31 to the defendants under the agreement dated September 26, 1977, and signed by the Defendant." There is no allegation corresponding to this Point as stated and argued by appellants in their brief.

The agreement relied upon by appellants arose subsequent to the time when appellants' duty to perform came into existence and is clearly not a plain and unambiguous condition precedent which could be enforced. Appellants have, in fact, been made whole for the cost of the carpeting via the vehicle of their counterclaim for this same item, and we rule this Point against them.

Judgment affirmed.

STEWART, P. J., and STEPHEN, J., concur.