Larry E. JOSEPH, Plaintiff-Respondent,

v.

Lawrence ELAM, Defendant-Appellant.

No. 49377.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 22, 1986.

Motion for Rehearing and/or Transfer
Denied May 20, 1986.

Joel Eisenstein, St. Charles, for plaintiff-respondent.

Rollings & Gerhardt, Eric O. Stuhler, St. Charles, for defendant-appellant.

SIMON, Judge.

Lawrence Elam, defendant, appeals from a judgment entered pursuant to the jury's verdict in favor of Larry E. Joseph, plaintiff, in a slander action in the Circuit Court of St. Charles County. The judgment was for actual damages of $3000 and punitive damages of $500. Pursuant to defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial, the trial court found there was insufficient evidence for the punitive damages and struck the punitive damages award, but overruled the motions on all other points. Plaintiff did not appeal.

On appeal, defendant raises ten points of error: 1) the judgment was against the weight of credible evidence; 2) the damage awards were unsupported by the evidence; 3) the trial court erred in allowing evidence of special damages which were not pleaded; 4) the trial court erred in refusing to allow testimony concerning a witness's inability to hear; 5) the trial court erred in failing to declare a mistrial where plaintiff's counsel informed the jury during voir dire of an incorrect burden of proof; 6) similarly, the trial court erred in its refusal to grant a mistrial when plaintiff's counsel injected the issue of settlement offers and offers of compromise; 7) the trial court erred in giving instructions which did not constitute the law of the case and did not follow the requirements of MAI; 8) the trial court erred in submitting an improper verdict directing instruction; 9) the trial court erred in submitting a punitive damages instruction; and 10) the trial court erred in its submission of the actual damages instruction. We affirm.

We review the evidence in a light favorable to the verdict. Dr. Robert Johns, the president of Lindenwood College in St. Charles, Missouri, was placed on a leave of absence on August 23, 1982. On that day, a memorandum signed by Robert Hyland, chairman of the college's board of directors, was distributed to all employees of the college stating that defendant, Lawrence Elam, Vice President for Finance, and Dr. Aaron Miller, Dean of the Faculty, would assume the president's responsibilities. Plaintiff, Larry E. Joseph, was Dean of Students from July, 1981 until he was discharged in November, 1982. On August 26, 1982, plaintiff was relieved of certain responsibilities, which were placed under defendant's supervision.

The statement, which is the subject of this action, was made at a dinner meeting on September 27, 1982. Dr. Miller was scheduled to meet on that evening with Howard Hamilton, a consultant. On the following day, Mr. Hamilton was to give a report to the Board of Directors of Lindenwood College concerning his firm's feasibility study for a major fund raising campaign. Prior to the scheduled dinner meeting, Dr. Miller found he had a conflict, so he asked defendant if he would meet with Hamilton. Walter Hundley, the Director of Development of the college, asked defendant why he was not invited to the meeting with Hamilton since Hundley's responsibilities entailed primarily fund raising. Defendant responded that Hundley was welcome to come. Defendant testified that the purpose of the meeting was to explain the arrangements concerning the board meeting the next day and as a courtesy, to take Mr. Hamilton to dinner.

Hundley met Hamilton at his hotel on the evening of September 27, 1982, and shortly thereafter defendant met them and they went to dinner. The three men sat in a booth in the restaurant with defendant directly across the table from Hundley on the aisle side of the booth. Hamilton was sitting next to defendant, and on the other side of Hamilton was a partition. Hundley testified that during the dinner meeting defendant stated, "Were you aware that Dean Joseph was an ex-convict and served

time in a federal penitentiary?" Although Hundley had a hearing loss of about forty percent in his left ear and ten percent in his right ear, he testified this did not in any way affect his ability to hear defendant make the statement. Hundley believed that the statement was made loud enough for Hamilton to have heard it, but he saw no direct response to the statement from Hamilton. Hamilton testified that he may have heard something regarding a state or federal penitentiary or another type of incarceration, but that it did not register with him because his mind was preoccupied with the report that he was going to give the following day. Hamilton also testified that Hundley did not appear to have a hearing problem. Defendant denied making any statements indicating that plaintiff was ever incarcerated or an ex-convict. However, defendant admitted referring to a number of administrators of the college and their status, including the fact that plaintiff had been relieved of certain of his responsibilities. The dinner meeting lasted a couple of hours, and there was no evidence that any of the three men were intoxicated. Within the next day or two, Hundley told plaintiff about defendant's statement. Hundley also told other staff members of the college when plaintiff was not present. Hundley and Hamilton did not testify in person. Their depositions were accepted into evidence without objection.

Plaintiff testified that he was not an ex-convict and had never been convicted of a felony or a misdemeanor. He also testified that after September 27, 1982, his interaction with the college community ceased. He was not invited or asked to attend meetings and his phone calls virtually stopped. Plaintiff maintained at trial that the statement contributed to his dismissal from the college in November, 1982. He stated that he had not been disciplined, reprimanded or counseled in any fashion by anyone including the board of directors prior to September 27, 1982, and that he had not been warned or advised prior to his dismissal that his job was in jeopardy. In addition, he testified concerning the improvements and contributions he felt he made to the college. The termination letter he received in November, 1982, stated he was terminated for cause, but plaintiff testified he was never informed as to what constituted cause.

Plaintiff's principal witness, Walter Hundley, was also fired from his position with Lindenwood College in the first part of November, 1982. He testified he held a slight grudge against defendant because he believed that his speaking honestly about defendant's statement was indirectly related to his dismissal. He also stated that on the night of the dinner meeting, defendant falsely accused him of cheating on his expense accounts. Hundley and plaintiff had a social relationship which included going to restaurants and bars and playing golf and gin rummy together. Sometime in 1982 plaintiff had threatened Hundley, and Hundley admitted he may have been somewhat afraid of plaintiff after the threat was made. Hundley also admitted he was hospitalized for depression in the early part of 1982. He stated he was treated with drugs and shock treatments, was completely cured, and had not seen a doctor for similar treatment since his release from the hospital around April of 1982. Although the treatments affected his memory prior to being hospitalized, he testified that his memory was not impaired at the time of the dinner meeting or afterwards.

There was also evidence that plaintiff had disciplined defendant's son when he was a student at the college, that defendant and plaintiff had a strained relationship, and that defendant informed the college's board of directors that he had problems with plaintiff. Other pertinent facts will be related in the disposition of defendant's points.

█ In his first point, defendant contends that the trial court erred in not sustaining his motions for directed verdict and judgment notwithstanding the verdict, because the judgment is against the weight of credible evidence. He argues that Walter Hundley, the only witness that heard and remembered the alleged defamatory

remark, was not credible. Howard Hamilton, the only other person present at the time of the remark, did not remember hearing the statement, and he had no interest or bias in the outcome of the lawsuit. Defendant argues that the judgment is against the weight of credible evidence because it reflects passion for a fired employee with a family and prejudice towards a college administration that was forced to make such a decision.

Reviewing a jury verdict, we do not determine the credibility of the witnesses, resolve conflicts in testimony, or weigh the evidence. *Fowler v. Daniel*, 622 S.W.2d 232, 236 (Mo.App.1981). It is the particular province of the jury, and of the trial judge on post trial motions to pass on the weight of the evidence and the credibility of the witnesses. *Thompson v. Healzer Cartage Co.*, 287 S.W.2d 791, 792 (Mo.1956). Here, the jury apparently found that Hundley's testimony was credible. Even though the jury did not have an opportunity to see Hundley or Hamilton testify in person, the jury had the opportunity to view the other witnesses and weigh the evidence. Even when the evidence is presented in deposition form, we do not substitute our determination for that of the trial court. *Hill v. Stealey*, 153 S.W.2d 813, 816 (Mo.App. 1941). Defendant's contention is without merit.

■ In his second point, defendant contends that the trial court erred in overruling his motions for directed verdict and judgment notwithstanding the verdict, because plaintiff's actual damage award in the amount of $3,000 did not have evidentiary support. He argues that the evidence in the case showed that the loss of the plaintiff's job was in no way related to the alleged defamatory statement, and in any event, plaintiff suffered no actual damages because plaintiff made a contract settlement with the college. However, plaintiff testified that immediately after the defamatory statement, his interaction with the college community ceased. He was not asked to attend any more meetings, he virtually stopped getting phone calls, and he was dismissed soon thereafter. He also testified that his contract with the college called for a salary as Dean of Students in the amount of about $40,000 per year through July of 1983. Although he settled with the college for $15,000, he stated that the value of his contract, including salary and other benefits for the period between his dismissal in early November of 1982 and July of 1983, was worth in the neighborhood of $60,000 to $70,000. His other benefits included an automobile with all expenses, a free house with all utilities including telephone, free meals at the dining hall for himself and his family, family hospitalization insurance coverage, and college tuition for plaintiff's son up to $4,000. He testified he accepted less than what the contract was worth because his family had to eat. Finally, plaintiff testified he could not obtain other employment until May of 1983.

We conclude that there is sufficient evidence that plaintiff suffered pecuniary damages as a result of the loss of his job above the $15,000 contract settlement with the college. In any event, the evidence of the cessation of plaintiff's interaction with the college community is indicative of injury to plaintiff's good name, reputation and fame. Plaintiff testified that prior to the date on which the defamatory statement was made he had a generally good relationship with the faculty and staff at the college and he interacted with them on a regular basis. The jury may award damages for injury to plaintiff's reputation in the absence of pecuniary loss, because injury to reputation is a proper element of damage in a suit for slander. *Sitts v. Daniel*, 284 S.W. 857, 862 (Mo.App.1926). Defendant's second point is denied.

■ In his third point, defendant claims that the trial court erred in overruling his motion in limine to limit or restrict the plaintiff from introducing evidence concerning special damages of loss of job, salary losses and inability to obtain additional employment, because these items were not specifically pleaded in violation of Rule 55.19. We disagree. When words

are defamatory per se, that is, defamatory on their face without the aid of extrinsic proof, special damages need not be alleged although proof of actual damage may be made to support the presumption of injury and to show its extent. *Langworthy v. Pulitzer Publishing Company,* 368 S.W.2d 385, 388 (Mo.1963). Here, the statement, i.e. words, clearly imputed that plaintiff had committed a crime and are defamatory per se. Therefore, special damages need not be pleaded. *Hunt v. Gerlemann,* 581 S.W.2d 913, 914–15 (Mo.App.1979). Defendant's third point is without merit.

█ In defendant's fourth point, he argues that the trial court erred in sustaining plaintiff's objections to the questions defendant asked Randy Wallach about his observations of Walter Hundley's inability to hear, because such evidence is relevant in that a necessary element of a prima facie case of slander is that such statement be heard. Upon direct examination by defense counsel, Randy Wallach testified that he was the Public Relations Director at Lindenwood College during the fall of 1982. After Wallach was asked whether he had occasion to work with Hundley on any projects, plaintiff's counsel asked to approach the bench. Plaintiff's counsel then objected to the relevance of Wallach's testimony. Defense counsel explained that he intended to show two things: 1) that Wallach knew of Hundley's profound inability to hear; and 2) that Hundley had made statements to Wallach expressing his profound dislike for the defendant. Plaintiff's counsel objected on hearsay grounds to any testimony of statements by Hundley. The trial judge indicated that he would sustain the objection. Also, he indicated that because there was already evidence concerning Hundley's loss of hearing and because Wallach's testimony concerning Hundley's loss of hearing would be opinion evidence, he would sustain an objection to a question calling for Wallach's opinion about Hundley's hearing loss.

Following the bench conference, defense counsel continued his direct examination of Wallach. He first asked several questions concerning the amount of interaction Wallach had with Hundley and two of those questions were objected to, but the objections were not sustained. Defense counsel then asked a series of questions, which were objected to, with the trial judge sustaining the objections. This latter series of questions is set out below:

Q Defense counsel: Did you ever observe Mr. Hundley having problems hearing or understanding?

Plaintiff's counsel: Objection as to the leading form of the question, your Honor.

THE COURT: Sustained.

Q Defense counsel: Did Mr. Hundley always understand you when you talked to him?

Plaintiff's counsel: Objection, your Honor, that calls for hearsay and it's a leading question.

THE COURT: Sustained.

Q. Defense counsel: Did Mr. Hundley ever attempt to position himself so he could hear you better?

Plaintiff's counsel: Same objection, your Honor, presumes that there was a hearing problem and the question in its form is improper and it calls for hearsay and it's leading.

THE COURT: Sustained.

Q Defense counsel: Did Mr. Hundley always respond to you when you talked to him?

Plaintiff's counsel: Objection, your Honor, because there are so many facts that are not present in that question. In its form; it's improper.

Defense counsel: Your Honor, that does not call for a hearsay answer and it is a question based upon the witness's own observation.

Plaintiff's counsel: Your Honor, if I whisper to someone and he doesn't respond, does that mean that he has a hearing problem? Of course not. The question in its form is improper and is calculated to destroy the credibility of another witness and it's a collateral issue. This man's not competent nor qualified to render an opinion and he's asking

for—he's asking for a response based upon hearsay conduct.

THE COURT: Sustained.

Q Defense counsel: Did you ever have occasion to talk to Mr. Hundley when he did not talk back to you?

Plaintiff's counsel: Same objection, your Honor.

THE COURT: Sustained.

Defense counsel: Do I understand the Court is not going to allow me to inquire in the whole area of being able—this man being able to communicate with Mr. Hundley?

THE COURT: Sustained, yes.

We find the questions to be leading or in improper form, and the objections were properly sustained. Furthermore, any attempt to solicit the opinion or conclusion of Randy Wallach would be improper, because generally, a nonexpert witness must testify to facts and cannot give opinions or conclusions. *Grace v. Union Electric Company*, 239 Mo.App. 1210, 200 S.W.2d 364, 368 (1947). Defendant's fourth point is without merit.

■ Defendant's fifth point is that the trial court erred in failing to declare a mistrial during voir dire where plaintiff's counsel advised the venirepersons that the burden of proof for all propositions in the case was merely a preponderance of the evidence. Following this statement, defense counsel advised that the proper standard of proof was by clear and convincing evidence and requested that the incorrect statement be stricken and a mistrial granted. The trial judge, without specifically ruling on the requests, advised the venirepersons that:

The degree of proof in this particular case is by clear and convincing evidence and the court will instruct you on that later ... there are civil cases where the preponderance of the evidence is sufficient, but the court will give you further instructions on that and the court doesn't want you to make up your minds on matters of law until the court finally instructs you as to what the law is.

The trial judge asked the venire panel if there was anyone who could not follow the court's instructions as to the law. No one answered and apparently he assumed by their silence that they could follow the court's instructions. After these comments, plaintiff's counsel continued his questioning and no objection was made by defendant.

Control of trial proceedings and the granting of a mistrial are matters within the sound discretion of the trial court. *Gerard v. Baxley*, 648 S.W.2d 930, 931 (Mo.App.1983). Mistrial is a drastic remedy to be used only when the prejudicial effect can be removed in no other way. *Sagehorn v. Phillips Petroleum Company*, 648 S.W.2d 647, 650 (Mo.App.1983).

Here, the trial judge cured the problem concerning plaintiff's counsel's inaccurate statement by advising the venirepersons that the burden of proof was not merely the preponderance of the evidence. Although the trial judge did not at that time elaborate on the fact that there were two burdens of proof, one for punitive damages (clear and convincing) and one for actual damages (preponderance of the evidence), he advised the jury as defense counsel requested, and defendant made no further objection. Even if there was an error, defendant did not properly preserve it on this point. Furthermore, the trial court properly instructed the jury on the two burdens of proof at the close of the evidence in the written jury instructions. Defendant's fifth point is denied.

■ In defendant's sixth point, he contends that the trial court erred in not granting a mistrial because plaintiff injected the issue of settlement into the case. Plaintiff's counsel asked the following question during cross examination of the defendant: "Are you the person that authorized or directed Mr. Hyland [the chairman of the board of directors of the college] to tell Larry Joseph [plaintiff] that he would be paid ten thousand dollars if he dropped his lawsuit against you?" Defense counsel objected to the question, requested that it be stricken and asked for a

mistrial. The question was not answered by the witness. The trial judge called counsel to the bench, and defense counsel argued that the question called for inadmissible evidence pertaining to plaintiff's contract with the college, settlement offers or settlement attempts. He particularly complained about plaintiff's counsel's attempt to "throw out numbers before the jury" concerning an offer of ten thousand dollars by the board of directors of the college. The trial judge then stated, "as to any settlement talks, I'm going to sustain the objection as to dollars." Plaintiff's counsel argued that his question sought an admission against interest and that it was properly admissible because Mr. Hyland was not an attorney and was in charge of the college. A conversation then occurred between plaintiff's counsel and the trial judge concerning an offer of proof. The trial judge never specifically ruled on the offer of proof, but the conversation between plaintiff's counsel and the trial judge ended when the judge sustained defendant's original objection. Defense counsel then requested that the jury be admonished to disregard both the question and the comment by counsel. The trial judge stated to the jury: "The court will sustain the last objection made and will order and direct the jury to disregard the last comment." Defendant did not object to the trial judge's actions at that point, and the trial judge never ruled on defendant's request for a mistrial.

We recognize that discretion is vested in the trial court as to the sufficiency of the corrective action taken after an improper question by counsel on cross-examination. *Hoerschgen v. Dunnavant,* 546 S.W.2d 751, 752 (Mo.App.1977). Here, the trial court clearly sustained defendant's objection to the question, and the jury was admonished to disregard it. Defendant made no claim at trial that instructing the jury to disregard the question concerning settlement was insufficient corrective action. Defendant's sixth point is denied.

■ Defendant's seventh through tenth points all allege errors in the jury instruc-

tions. The eighth point will be discussed initially. It alleges that the verdict directing instruction, instruction number six, should have been modified. Instruction number six traces MAI 23.10(1), which is the applicable verdict directing instruction in a slander case where the plaintiff is not a public official or public figure. Defendant argues that MAI 23.10(1) is inadequate due to its failure to require a finding by the jury that the alleged defamatory statement was false, and that MAI 23.10(1) is ambiguous because it does not require a submission to the jury of a definition of the term "fault." The notes on use and the comments to MAI 23.10(1) do not require either modification. Rule 70.02 requires that whenever Missouri Approved Instructions contain an instruction applicable in a particular case, such instruction shall be given to the exclusion of any other on the same subject. Defendant's eighth point is denied.

In defendant's seventh point, he contends that the giving of jury instructions one through eight was error, but the argument on this point in defendant's brief only set out instructions numbered three and eight. We will only address errors alleged in those instructions set out in defendant's brief. Rule 84.04(e).

■ Defendant claims that instructions numbered three and eight deviated from the applicable MAI instructions. In reviewing defendant's seventh point, we recognize that we should reverse on grounds of a defective jury instruction only where there are defects of substance with substantial potential for prejudicial effect. *Fowler v. Park Corporation,* 673 S.W.2d 749, 755–56 (Mo. banc 1984). A trivial imperfection and deviation is not enough to create prejudicial error in pattern jury instructions. Before reversible error is declared due to improper jury instructions, it must be shown that the instruction misdirected, misled or confused the jury. *Wilson v. Bob Wood & Associates, Inc.,* 633 S.W.2d 738, 751 (Mo.App.1981).

■ Defendant correctly argues that instruction number eight, based on MAI 10.-

01 and 16.01, did not set forth the proper standard to award punitive damages. Instruction number eight is set out below:

If you find in favor of plaintiff under Instruction No. 6, and if you believe the conduct of defendant as submitted in Instruction No. 6 was willful, wanton, or malicious, then in addition to any damages to which you find plaintiff entitled under Instruction No. 6, you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter defendant and others from like conduct.

The term "malicious" as used in this instruction does not mean hatred, spite, or ill will, as commonly understood, but means the doing of a wrongful act intentionally without just cause or excuse.

The proper punitive damage instruction is contained in the bracketed second paragraph of MAI 4.15. MAI 4.15, Notes on Use Nos. 1 and 2; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 348–50, 94 S.Ct. 2997, 3011–12, 41 L.Ed.2d 789 (1974). This instruction would have required the jury to find that defendant made the defamatory statement with knowledge that it was false or with reckless disregard for whether it was true or false in order to award punitive damages. Defendant objected to the submission of instruction number eight at trial and stated in his motion for new trial that instruction number eight did not set forth the proper standard for an award of punitive damages and was inconsistent with *Gertz*. However, the trial court struck the punitive damages, therefore defendant has not been injured by the improper submission.

■ Further, defendant contends that instruction number three is an improper modification of MAI 3.06, burden of proof, by omitting the words, "in the second paragraph of," referring to the second bracketed paragraph of MAI 4.15. Defendant did not object at trial to the submission of instruction number three. More importantly, he did not make a specific objection to this instruction in his motion for new trial, but he merely stated the trial court "erred

in giving instructions 1 through 8 and verdict A for the reason that same do not constitute the law of the case." Since defendant did not state with specificity, in his motion for new trial, why instruction number three was erroneous, he did not preserve this allegation of error for appellate review. Rule 78.07. *Dockery v. Mannisi*, 636 S.W.2d 372, 377 (Mo.App.1982). In any event, we do not find that defendant was prejudiced. Defendant's seventh point on appeal is without merit.

■ In defendant's ninth point, he basically makes the same arguments, concerning the improper submission of instruction number eight, that he made in his seventh point. He also argues that this instruction "was not supported by the evidence in that the inflammatory language contained in such improper instruction unduly prejudiced the verdict and the actual damage award given by the jury." Defendant did not make this latter argument in his motion for new trial. Thus, defendant did not preserve this allegation of error for appellate review. Rule 78.07. *Dockery*, at 377. Defendant's ninth point is denied.

■ In defendant's tenth point, he alleges that the trial court erred in giving instruction number seven, because it improperly modified MAI 4.15, and this unduly prejudiced the verdict and the award of actual damages. Instruction number seven duplicated the first paragraph of MAI 4.15, and it instructed the jury on the issue of actual damages. However, it failed to include the bracketed second paragraph of MAI 4.15 concerning punitive damages, which the notes on use require to be submitted in the same instruction as the first paragraph of MAI 4.15. MAI 4.15, Notes on Use Nos. 1 and 2; *Gertz*, 418 U.S. at 348–50, 94 S.Ct. at 3011–12.

Defendant objected at trial that instruction number seven "does not contain a directive for the establishment of punitive damages, nor a criteria or direction to the jury on how to set punitive damages," and "that it does not state the applicable law in the area of both actual and punitive damages for slander...." As stated previous-

ly, defendant generally stated in his motion for new trial that the trial court erred in giving instructions one through eight and Verdict A because they did not constitute the law of the case. Defendant also stated in his motion for new trial that the trial court "failed and omitted to give instruction 4.15 as that statement appears in the Missouri Approved Jury Instructions, which instruction is the proper statement of the law of the case."

Since instruction number seven set out the first paragraph of MAI 4.15, which properly instructed the jury on actual damages, and the punitive damages were struck by the trial court pursuant to defendant's motion for new trial, defendant was not prejudiced. Thus, defendant's tenth point is without merit.

Judgment affirmed.

KAROHL, P.J., and GARY M. GAERTNER, J., concur.