Louis **LESSER** and Jack Ford et al., **Plaintiffs-Appellants-Respondents,**

v.

Lloyd S. **RUBIN,** **Defendant-Respondent-Appellant.**

**Nos. 37381, 37382.**

Missouri Court of Appeals, St. Louis District, Division Two.

March 15, 1977.

---

Slonim & Ross, Richard L. Ross, David C. Drury, Clayton, for plaintiffs-appellants-respondents.

Love & Lacks, Chester A. Love, Thomas K. Edelmann, Clayton, for defendant-respondent-appellant.

McMILLIAN, Presiding Judge.

This is an appeal from a jury verdict in favor of Lloyd S. Rubin, defendant-respondent-appellant (hereinafter referred to as Rubin) on his counterclaim against Louis Lesser, plaintiff-appellant-respondent (hereinafter referred to as Lesser), and Lesser and Jack Ford, plaintiffs-appellants-respondents (hereinafter referred to as Lesser and Ford) and against Lesser and Ford on their claim against Rubin. We affirm.

In March of 1969, Lesser and Rubin, who had engaged in a significant prior business transaction, entered into two written agreements. The first agreement (hereinafter referred to as the Stock Sale) concerned the sale of 80,000 shares of stock. Lesser, the seller, was to deliver the shares of stock and to arrange for Rubin to be accepted into a voting trust. The purchase price was one dollar per share. The second agreement (hereinafter referred to as the service agreement) provided that Rubin pay Lesser and Ford, the general partners of the limited partnership Less-Ford Investment Limited, $40,000 over a period of one year for submitting investment opportunities to Rubin. Payment was to be made in an amount of $3,700 on the 15th day of each month. By the service agreement, Lesser and Ford were not obligated to provide any set number of investment opportunities. Nor was Rubin required to accept any investment opportunities. The service agreement further provided that:

"4. In the event that Investor makes any purchase, sale, lease, investment or transaction of any kind with any person, firm or corporation, or in any way utilizes the services of Finder to make investments, he will not be obligated to pay any additional fees, expenses or compensation whatsoever to Finder and Investor's sole liability hereunder shall be to pay the one year's retainer fee as set forth above. . . ."

The service agreement made no claim that the retainer fee was additional consideration for the stock agreement. The service agreement did provide, however, that it was the entire understanding of the parties to be modified only by a signed writing.

The stock sale took place in mid-April after Lesser provided Rubin with a letter seemingly accepting him into the voting trust. Rubin paid the $80,000 to Lesser. On July 2, 1969, the voting trust was terminated. Rubin retained the stock shares. After an initial payment of $3,700 on the service agreement, Rubin made no further payment. Lesser testified that he continued to provide "opportunities" through December, 1969.

In December, 1970, Lesser and Ford filed suit for breach of the service agreement by Rubin's failure to pay the balance of $36,300. A second count of their petition alleged in the alternative that the service agreement was additional consideration for the stock sale. Rubin's first amended answer, filed by leave of court on February 22, 1974, claimed as an affirmative defense that the service agreement was without consideration because neither Lesser nor Ford had promised any performance. Rubin also denied that Lesser and Ford had performed under the service agreement. Rubin further answered that the service agreement purported to be a complete integration of the parties' agreement and that it made no mention of it being additional consideration for the stock sale.

On February 22, 1975, Rubin filed his first amended counterclaim containing two counts. Count I sought damages of $80,000 caused by Lesser's alleged breach of the stock sale agreement. Rubin alleged that Lesser had failed to cause him to be accepted into the voting trust. Count II alleged that the service agreement contained no consideration on the part of Lesser and Ford and was, therefore, void. Rubin claimed that he was entitled to the return of his $3,700.

After a May, 1975, trial in which Lesser and Rubin were the sole witnesses, the jury returned two verdicts. The first found ". . . the issues in favor of the defendant Lloyd S. Rubin on his counterclaim against the plaintiff Louis Lesser" and assessed damages and interest at $108,046.26. This jury verdict obviously related to the first count of Rubin's counterclaim concerning the stock sale. The second jury verdict found ". . . the issues in favor of the defendant Lloyd S. Rubin and against the plaintiffs Louis Lesser and Jack Ford" and assessed damages and interest at $5,050.50. This second jury verdict seems reasonably interpreted as a jury finding against Lesser and Ford on their claim for $36,800 under the service agreement and in favor of Rubin as to Count II of his counterclaim seeking refund of $3,700.

Lesser and Ford's post-trial motion sought to have the court set aside the verdicts of the jury and to have judgments entered in accordance with their motion for a directed verdict, or alternatively, to grant them a new trial. The trial court denied any relief as to Lesser and Ford's original claim. The court did, however, grant judgment notwithstanding the verdict as to Count I of Rubin's counterclaim concerning the stock sale. This order was based on a finding that Rubin had failed to make a prima facie case or to show any damages, ground 22 as alleged in plaintiffs' motion. The order also provided that if it was determined on appeal that Rubin had made a submissible case on Count I of his counterclaim, that Lesser and Ford should be granted a new trial on that count on the basis of grounds 9, 15 and 20 of plaintiffs' motion. Apparently, the trial court also granted judgment notwithstanding the verdict as to Count II of Rubin's counterclaim concerning the service agreement. The order does not specify the grounds for this portion of it. In effect, the trial judge denied all parties' monetary recovery on any of the counts. All parties appealed.

■ On appeal, Lesser and Ford raise four issues, two of which, Contentions II and IV, allege trial errors pertaining only to Count I of Rubin's counterclaim on the stock sale. Inasmuch as the order of the trial court overturned the jury's verdict for Rubin on that claim, we find that Lesser and Ford are not "aggrieved" as to these issues as required by § 512.020, RSMo 1969. We will not, therefore, address these two issues. The two remaining contentions raised by Lesser and Ford are that: The verdict and judgment in favor of Rubin on their original claim are contrary to the evidence, and the court erred in overruling their motion for a directed verdict because no justiciable issues of fact existed; and that the court erred in submitting to the jury Rubin's verdict-directing Instruction No. V. Rubin's verdict-directing Instruction No. V reads as follows:

"Your verdict must be for the defendant, (Rubin) on defendant's claim for damages against plaintiffs if you believe:

"First, the plaintiffs were not required to do anything under their agreement with defendant dated March 21, 1969, and

"Second, that the agreement was not additional consideration for the sale of stock from plaintiff Lesser to defendant.

"Third, defendant paid plaintiffs $3,700 pursuant to said agreement, and

"Fourth, defendant was thereby damaged

"[U]nless you believe that defendant is not entitled to recover by reason of Instruction No. 3."

Lesser and Ford contend that the submission of this instruction was error because the instruction wrongfully required the jury to interpret the legal meaning of contracts and because it failed to hypothesize and require a finding that plaintiff did not perform under the service agreement.

■ The first argument seeks to apply a rule of law that is applicable to unambiguous contracts. Here, the trial court allowed testimony by Lesser, which sought to establish that, contrary to the content of the agreement, the service agreement was additional consideration for the stock sale. Rubin then sought to refute this contention through his own testimony. The trial court then properly left the task of sifting this

864

contradictory, extrinsic evidence to the jury. *Commerce Trust Co. v. Howard,* 429 S.W.2d 702 (Mo.1968).

The second argument also fails as the instruction plainly requires the jury to find Lesser and Ford were not entitled to recover under their own verdict-directing instruction. That instruction No. 3, required a finding of performance by Lesser and Ford, while it failed to mention lack of mutuality. A finding of failure of performance was, therefore, necessary for the jury to find as it did against Lesser and Ford, and for Rubin.

Lesser and Ford's other general contentions, that the jury's verdict was against the weight of evidence, is divided into three subsections. The first two subsections appear to relate only to the stock sale issue, on which they prevailed below, and, therefore, we pass to the third subsection. Lesser and Ford argue that the service agreement did not lack mutuality of obligation. Recognizing the requirement of mutuality of obligation in contracts, *Feinberg v. Pfeiffer Co.,* 322 S.W.2d 163, 167 (Mo.App.1959), Lesser and Ford offer two reasons in support of their contention that the service agreement did not lack mutuality. First, the agreement requires them to bear all the expenses of finding investment opportunities without the possibility of additional compensation if Rubin chose to pursue any of the opportunities; and, second, the service agreement was additional consideration for the stock sale. The first suggestion neatly overlooks the fact that by Lesser's own admission he and Ford were not required to find any investment opportunities. Their obligation to bear the expenses is, therefore, illusory. The second contention seeks to overlook the fact that the trial court allowed Lesser's testimony on this issue of additional compensation and submitted the issue to the jury. The jury verdict settled the question unless we could say that the holding is palpably unreasonable. *James v. Turilli,* 473 S.W.2d 757, 762 (Mo.App.1971). We do not.

Lesser then contends that want of mutuality is available as a defense only to escape portions of the agreement which have not been performed. While this is a correct statement of the law, see, *e. g., Jensen v. Estate of McCall,* 426 S.W.2d 52, 57 (Mo.1968), it alone is not sufficient to compel recovery by Lesser and Ford. The verdict-directing instruction on their claim required the jury to find that they had found and submitted investment opportunities. From the verdict it is apparent that the jury found they had not done this. Our review of the evidence adduced at trial does not convince us that this finding is unreasonable. *James v. Turilli,* supra.

Next we consider Rubin's cross-appeal. First, we consider the cross-appeal as it relates to the trial court's action in taking away the jury verdict for Rubin on the stock sale contract. The trial court granted Lesser and Ford's motion for judgment notwithstanding the verdict on this count of Rubin's counterclaim on ground 22 of their motion. This ground contended that "defendant was not entitled to recovery, having failed to prove a prima facie case in that defendant failed to present any competent evidence that he was not accepted into the voting trust and further failed to prove that he was damaged in any way."

On appeal, to sustain this action of the trial court, we must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party, *Boyle v. Colonial Life Ins. Co. of America,* 525 S.W.2d 811, 815 (Mo.App. 1975), and yet be able to conclude that reasonable minds could not differ on the proper disposition of the case, *Connizzo v. General Am. Life Ins. Co.,* 520 S.W.2d 661, 665 (Mo.App.1975). Crucial in determining whether the case should be submitted to jury resolution is whether "each and every fact essential to liability is predicated upon legal and substantial evidence", *Houghton v. Atchison, Topeka & Santa Fe R.R. Co.,* 446 S.W.2d 406, 409 (Mo. banc 1969).

In the present case, the stated general rules require that we consider whether Rubin introduced any sufficient evidence to

prove both breach of contract and damages. Rubin contends that he proved breach; that is, non-acceptance into the voting trust. The only evidence presented on this issue by Rubin at trial was his own opinion that he was not accepted. Rubin's testimony seems inconsistent with his acceptance of the stock certificates, his subsequent pledge of the stock to secure a loan and Lesser and Ford's assertion that Rubin was accepted, as evidenced by a letter to that effect from the trustees. In reviewing the drastic action of granting a directed verdict, we must, however, consider only the moving party's supportive evidence. Arguably, Rubin introduced sufficient evidence on the issue of breach because a jury could validly believe Rubin, totally disbelieve Lesser and Ford and refuse to find any probative value in Rubin's acceptance and pledge of the stock.

On the issue of damages, however, our review of the record reveals no legal and substantial evidence upon which a jury could rationally measure damages. Rubin argues that the value of the stock outside the voting trust was much less than its value within the trust. The only evidence, however, of a lesser value of the stock which Rubin presented was based on the value of the stock at the time of trial rather than at the time of the alleged breach six years before. In addition, the values at the time of trial appeared to be based on unlettered, freely trading stock whereas the stock in question was not freely trading. The damages which Rubin proved were not, therefore, those which could be said to have naturally and proximately resulted from the alleged breach. In this context, questions of credibility and the relative significance of evidence are not involved. Thus, we cannot say that the trial court erred in holding that Rubin failed to prove any damages. Liability cannot rest upon guesswork, conjecture or speculation, *Houghton v. Atchison, Topeka & Santa Fe R.R. Co.,* supra, at 409.

The final three arguments raised by Rubin as to this count attack the grounds on which the trial court based its alternative order for a new trial. Because we affirm the granting of a judgment notwithstanding the verdict, we need not reach these issues.

The order of the trial court also deprived Rubin of the jury verdict in his favor on the second count of his counterclaim which sought refund of the $3,700 paid against the service agreement. We must affirm this portion of the trial court's order because Rubin has failed to effectively appeal the determination. Rubin's notice of appeal states that he "appeals from the appealable order entered in this action on the 19th day of August, 1975" and further provides that Rubin "appeals only from those portions of the order by which he is aggrieved, as more fully set forth in the explanation of judgment and jurisdictional statement attached hereto." The "explanation of judgment" and jurisdictional statement sets out the entire post-trial order except for that portion which refused relief to Lesser and Ford on their original claim. In an ambiguous manner, therefore, Rubin has suggested to this court that he was dissatisfied with the trial judge's action in depriving Rubin of both jury verdicts. Rubin's fatal error, however, is his failure to include in his brief any specific contention or even a single sentence of argument suggesting why the trial court erred in depriving him of the jury verdict for a refund of his $3,700.00. In this posture, we express no opinion on the propriety of the trial court's action because the issue is not before us, Rule 84.04(d), V.A.M.R.

We, therefore, affirm the judgment of the trial court in all respects.

DOWD, J., and ALBERT L. RENDLEN, Special Judge, concur.