**Robert W. JACKSON, Appellant,**

v.

**Jerald L. RADTKE, et al., Respondents.**

**No. WD 32952.**

Missouri Court of Appeals,
Western District.

March 27, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
May 29, 1984.

Application to Transfer Denied
July 17, 1984.

Donald E. Raymond, Kansas City, for appellant.

James M. Ramsey, Kansas City, for respondents.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

NUGENT, Judge.

Robert W. Jackson brought this action for compensation due under a contract of employment with Condelco, Inc. Jackson also joined as defendants Jerald L. Radtke, Brush Creek Town Homes Development Corporation, Brush Creek Town Homes I, Ltd., Brush Creek Town Homes II, and Simon Company, Inc., on the theory that the parties were liable as joint venturers. At the close of the evidence, the trial court directed a verdict in favor of all defendants except Condelco, Inc. Thereafter, in accordance with the jury verdict in favor of Condelco, the court entered judgment against the plaintiff. We affirm the judgment.

On this appeal, plaintiff complains that the trial court erred in directing verdicts against him, in excluding certain evidence of a partnership between the defendants and in excluding evidence of negotiations leading up to the contract.

This case rises out of a plan devised by Housing Development Corporation and Information Center (HDCIC) to use block grant money received by the City of Kansas City to apply to housing in that city. The plan was to rehabilitate deteriorated and vandalized houses owned by the Department of Housing and Urban Development (HUD) which could not be sold. The plan contemplated placing a number of houses under a multi-family mortgage guarantied by HUD, the purchase and rehabilitation of the houses with the proceeds of the guarantied loans, and the ultimate repayment of the loans from rentals received from tenants under a program in which HUD subsidized that part of the rent which the qualified needy tenants could not pay.

At first, HDCIC was to have participated in the program as a joint venturer with defendant Radtke, the president and major stockholder of Condelco. Because of its relationship with the city, however, HDCIC was required to sell its interest in the project. Defendants Radtke and Condelco acquired that interest.

Defendant Radtke organized a limited dividend corporation under the provisions of § 215.070,[1] known as Brush Creek Town Homes Development Corporation to serve as the sponsor of the project. Originally, the project contemplated rehabilitation of 108 houses. It later was reduced to 107. Two limited partnerships were formed to serve as owners of those houses: Brush Creek Town Homes I, Ltd., became the owner of the first forty-nine houses, and Brush Creek Town Homes II, acquired an additional fifty-eight houses. In those limited partnerships, defendants Radtke, Condelco and the development company were the general partners while limited partnership interests were sold to investors interested in income tax write-offs.

The two limited partnerships then contracted with Condelco to do the construction work to rehabilitate the houses. The

**1.** Unless otherwise indicated, all sectional references are to Revised Statutes of Missouri, 1978.

entire project was financed by mortgage loans from the Missouri Housing Development Commission (MHDC) and HDCIC. These loans were secured by the HUD's guaranty.

Plaintiff Robert W. Jackson was an experienced builder who had in the past supervised such rehabilitation work. While the plans for the project were being developed, Jackson was employed by HDCIC where he became familiar with the project. In April, 1978, Condelco wrote Mr. Jackson the following letter:

Dear Mr. Jackson:

CONDELCO, INC. is pleased to make the following offer as it relates to its Brush Creek Town Homes development in Kansas City and to yourself as its proposed general supervisor.

On or about May 10, 1970 you would become a full time employee of CONDELCO, INC. and would be responsible for the management of the mini general contractors as well as any other subcontractors employed by the corporation in connection with the completion of the development.

The monthly salary for this position will be Two Thousand Dollars, ($2,000.00) plus a truck allowance of One Hundred Fifty Dollars, ($150.00). The corporation will also make medical insurance available to you through our group program which includes a term life insurance policy of $5,000.

Since time is of the esence [sic] as it relates to the completion of the development, the corporation will cause Jerald L. Radtke to pay to you out of the proceeds from syndication 10% of his net fee as an additional consultant fee. This fee will be paid if the development is completed and finally closed according to the time restraints imposed by the Department of Housing and Urban Development and the Missouri Housing Development Commission.

Further, you will share in any profits generated to the corporation as a result of partnerships or joint ventures arising out of the general contractors construc-

tion contract in an amount equal to 40% of the net profits.

Welcome aboard,

CONDELCO, INC.          Accepted by:

By /s/ Jerald L. Radtke       /s/ R.W. Jackson
Jerald L. Radtke       Effective 7/15/78

Jackson accepted the offer, effective July 15, 1978, at which time he left HDCIC and went to work for Condelco. At trial, the testimony indicated that defendant Radtke, who lived in Detroit, did not want to move to Kansas City for the project and employed Jackson to coordinate all of the rehabilitation and to supervise the contractors hired by Condelco to perform the actual construction needed to rehabilitate the houses.

During the ensuing months plaintiff Jackson became dissatisfied with his work at Condelco. He claimed that Radtke's brother James was given his position and that he could not perform the work he was hired to do. He testified that Condelco treated small contractors unfairly and that he had also refused to "juggle" the mortgage money (as Radtke directed) to complete the houses. He said that he resigned rather than risk liability for misapplication of funds. He resigned on March 15, 1979.

Plaintiff sued all defendants on the theory that each defendant was a partner in the rehabilitation project. He alleged that, "following the original entering of their relationship" the defendants had agreed to compensate him for certain services by paying him

a sum derived from ten percent (10%) of the net syndication fees due said defendants, amounting to at least $24,212.90, and also the net profit on construction work and repair work done on at least 108 houses, the net profit amounting to at least $1,000 per house, of which plaintiff was to receive forty percent (40%) or at least $132,604.00, that the total due plaintiff from defendants was at least $156,816.00 [sic]; that said amount is due, demanded and unpaid.

At trial, the plaintiff's counsel in his opening statement and by his questions to

plaintiff and other witnesses showed the jury that, in counsel's view of the lawsuit, plaintiff's theory was that Condelco and the other defendants in partnership had contracted to pay plaintiff certain percentages of the syndication proceeds and net profits of their entire enterprise. Plaintiff, in his testimony, however, testified that he was entitled to forty percent of the profits Condelco's joint ventures produced. Plaintiff explained that one of HUD's purposes in guarantying the loans on the Brush Creek Town Homes projects was "to provide an opportunity for small disadvantaged contractors to be taught how, through joint ventures, to do these houses ...." He testified that "Condelco had a joint venture or a partnership on each one of the one hundred and eight houses ...." Referring to his own contract with Condelco, plaintiff then asserted, "That's the only way that can be construed, and it doesn't take a lawyer to construe it." He further testified that he was not concerned with partnerships such as any partnership arrangements Condelco entered into in constructing Brush Creek Town Homes I and II. Those agreements, he said, were executed before he went to work, and he was never "given those agreements."

Mr. Jackson also testified that defendant Radtke expected plaintiff to work with the contractors who were doing the rehabilitation work as joint venturers with Condelco. Mr. Radtke induced plaintiff to join Condelco as general supervisor with the promise of a ten percent share of the syndication fee and a forty percent share of the net profits on the Condelco's construction contract. Defendant Radtke estimated that Jackson's share "would be somewhere in the realm of one thousand dollars" per house under Condelco's joint venturers with the mini-contractors. The plaintiff also testified that at sometime in February, 1979, at plaintiff's request, defendant Radtke sent him a "clarification" of the syndication fee in the form of a handwritten note. The note set out the formula for calculating the net syndication fee and estimated that ten percent of it would be $7,630. The note concluded with, "This is predicated upon finishing on time." On February 22, 1979, Mr. Jackson sent Condelco his resignation to be effective on March 15.

Plaintiff's witness Karl Arterberry described "syndication proceeds" as the "out-of-pocket money" of the owner, his investment above what he borrows to construct the project. Those funds are used to pay costs of construction and other expenses and obligations incurred in the course of the project. The maximum an owner could borrow from MHDC or HUD on such projects was ninety percent of the estimated cost of the project. The owner had to invest his own monies or an outside investor's to cover the difference.

In his turn, defendant Radtke testified that he had originally planned to find some twenty-five skilled, minority contractors (mini-contractors) to enter into the joint ventures with Condelco in the rehabilitation of the 108 houses. The joint venturers would share with Condelco the estimated profit of $1,000 on each house. Mr. Jackson's share of those profits would have been $400 per house. Jackson was supposed to find those mini-contractors, but he failed to produce them and, therefore, Condelco never formed such joint ventures. Instead, Condelco simply contracted with the mini-contractors as Condelco's sub-contractors. Any profits made on the sub-contracts went to the sub-contractors, not to Condelco.

Defendant Radtke also testified that Mr. Jackson did not perform his job well and frequently could not be found during the work day. The plaintiff's failure to perform caused Condelco to miss construction deadlines and to exhaust the syndication proceeds. Although Mr. Jackson claimed that Condelco or the other joint venturers made a profit on the project and that he was entitled under the contract to forty percent of the profit, defendant Radtke denied that a profit was made at all.

Condelco had agreed with MHDC to complete Phase I of the project, that is, the rehabilitation of the houses acquired by

Brush Creek Town Homes I, Ltd., by January 9, 1979. Phase II was to be completed by May 25, 1979. Phase I was actually completed as of September 25, 1979, and Phase II as of February 22, 1980. Defendant Radtke testified without contradiction that Condelco was required to pay over $45,000 in liquidated damages plus additional interest and expenses because of the delays in completion of the construction, precluding profit on the project.

Plaintiff's witness, Karl Arterberry, an employee of HDCIC, confirmed Mr. Radtke's testimony that he had received no net syndication proceeds or fee because of the additional costs of the project. He testified that, as of the time of trial in 1981, the limited partnerships, owners of the project, remained indebted to HDCIC for about $140,000 in unpaid principal. The loans on both phases of the project were in default. Defendant Radtke had given HDCIC his personal note for payments of that debt. Mr. Arterberry also stated that to his knowledge no net syndication proceeds had been paid to any of the parties, including defendant Radtke. HDCIC had examined the distribution of the loan proceeds at every stage of the project. It too was interested in collecting $16,000 or ten percent of the anticipated net syndication proceeds, but, despite its continued scrutiny of the distribution of all monies in the project, HDCIC had been unable to find any net syndication proceeds. The total cost of the project had absorbed all of the syndication monies.

After briefly identifying them, plaintiff offered his Exhibits No.'s 7 and 8. He testified that No. 7 was "one of the partnership agreements relative to the syndication of the project." It bore the label "Brush Creek Town Homes II, Ltd., Amended and Restated Limited Partnership Agreement" and the filing stamp of the Jackson County Department of Records. Exhibit No. 8 he identified as "the Missouri Housing Development Corporation commitment to the project, that they will use state money to fund it." No other testimony was offered regarding those exhibits. The court sustained defendants' objections to them.

The next *apparent* reference to plaintiff's Exhibits No. 7 or No. 8 occurred at the end of the plaintiff's case. Plaintiff's counsel attempted to read into evidence defendants' answers to plaintiff's interrogatories, including portions of a document attached to the answer to Interrogatory No. 3, that is, the Amended and Restated Limited Partnership Agreement. Interrogatory No. 3 was: "3. Please state whether, during the times referred to in plaintiff's petition, you were operating in any form of partnership or other unincorporated form, stating in detail what it was, and attaching all papers in connection with the organization of such concern." The trial record at no point identifies the attached document as either plaintiff's Exhibit No. 7 or No. 8, one of which had apparently been attached to answer No. 3 as part of the answer.

Defendants objected to the relevancy of portions of the answers, including the attached document. The court sustained the objection and permitted plaintiff's counsel to read only a portion of the answer or attached document. Thus, the answer which plaintiff's counsel read to the jury was "Limited Partnership."

I.

Plaintiff's first point is that the court erred in directing a verdict against him in favor of Jerald Radtke, Brush Creek Town Homes Development Corporation, Brush Creek Town Homes I, Ltd., and Brush Creek Town Homes II. Plaintiff claims that he made a submissible case that the respondents had entered into a joint venture with Condelco and were, therefore, jointly liable with Condelco on plaintiff's claim for compensation on his contract of employment.

In reviewing a trial court's action in directing a verdict in favor of a defendant at the close of the plaintiff's case, we must recall that directing a verdict is a drastic measure. We must consider all the evidence then before the court in the light

most favorable to the plaintiff, accepting as true that which is not entirely unreasonable, according to plaintiff the benefit of all favorable inferences to be drawn from the evidence, rejecting all unfavorable inferences, and disregarding defendant's evidence except insofar as it aids plaintiff's case. *Beshore v. Gretzinger*, 641 S.W.2d 858, 863 (Mo.App.1982); *Borchers v. Lock*, 625 S.W.2d 244, 246 (Mo.App.1981). "When challenged on appeal, a verdict directed against plaintiff will fall 'unless the facts in evidence and the legitimate inferences to be drawn from such facts, are so strongly against the plaintiff as to leave no room for reasonable minds to differ.' " *Barnett v. M & G Gas Co.*, 611 S.W.2d 370, 371 (Mo. App.1981); *Abel v. Campbell 66 Express, Inc.*, 378 S.W.2d 269, 271 (Mo.App.1964).

■ The plaintiff's duty remains, nevertheless, to remove his case from the area of conjecture and establish it by substantial evidence or by inferences reasonable to be drawn from the evidence. *Zeigenbein v. Thornsberry*, 401 S.W.2d 389, 393 (Mo. 1966); *Vietmeier v. Voss*, 246 S.W.2d 785, 787 (Mo.1952).

Plaintiff's claim depends upon proof of each of several elements. First, he had to prove the existence of a joint venture or a partnership. Then he had to show that he had contracted with that entity. Next, he was required to show that he performed his part of the bargain and that the defendants had failed to perform as agreed. Finally, to prove his damages, plaintiff had to prove two things: (1) that defendant Radtke received or was entitled to a net fee from syndication proceeds and the amount of that fee so that plaintiff's ten percent share could be calculated; and (2) the existence and amount of "any profits generated to the corporation [Condelco] as a result of partnerships or joint ventures arising out of the general contractors [Condelco's] construction contract."

The evidence failed to prove any one of those elements.

Plaintiff's basic agreement, if any, with any joint venture or partnership must be through his contract with Condelco, his employer. Assuming, arguendo, the doubtful proposition that an employee of one partner or joint venturer made, by reason of his contract of employment with that partner, may bind the whole partnership, nevertheless, plaintiff's claims here depend upon proof of his contract with Condelco, performance by plaintiff, a breach of contract by defendants, and plaintiff's damages.

The difficulty with plaintiff's position is that both his testimony and the testimony of defendant Radtke was that the joint venturers referred to in the contract of employment were joint ventures to be entered into with the mini-contractors, not joint ventures with the limited partnerships, the purpose of which was to raise the additional money required above the ninety percent of estimated costs of construction borrowed from the housing agencies. In his testimony, plaintiff specifically denied any knowledge of or claim under any contract Condelco and defendant Radtke had with the limited partnerships.

■ In considering the trial court's ruling on defendants' motion for a directed verdict, we must sustain the trial court if we find that the evidence of an agreement between the plaintiff and the defendants other than defendant Condelco was "so strongly against plaintiff as to leave no room for reasonable minds to differ." *Barnett v. M & G Gas Co., supra*, at 371. We so find. Plaintiff's own understanding of his contract was that it was with Condelco and not the remaining defendants. The trial court was correct in directing the verdicts against plaintiff and in favor of defendants Jerald Radtke, the development corporation, and the limited partnerships.

■ Moreover, even if plaintiff had adduced evidence of an agreement between those defendants and himself, he failed to prove that any profits were generated by Condelco out of its "contractors construction contract." On the contrary, the defendants' evidence, confirmed by the testimony of Karl Arterberry of HDCIC, plaintiff's witness, was that Condelco had made no profit and was in fact heavily indebted

to HDCIC, costs of construction having greatly exceeded estimates and Condelco having been required to pay over $45,000 in liquidated damages because of failure to complete on time according to its contract with HUD. Assuming for the moment that plaintiff's proof had established an actionable breach of contract, without "legal or substantial evidence upon which a jury could rationally measure damages," the trial court's direction of a verdict against the plaintiff must be sustained. *Lesser v. Rubin*, 548 S.W.2d 860, 865 (Mo.App.1977).

With respect to the issue of net syndication proceeds or net syndication fee, the evidence coming from both the defendant and Karl Arterberry was that no net remained after construction costs and expenses were paid, that all of the syndication proceeds were used in construction and related costs and expenses and that Condelco and defendant Radtke were left with a net loss.

█ Finally, plaintiff offered no proof of timely completion of the construction. Condelco's offer of a percentage of the profits to plaintiff was based on timely completion of the construction contract. The contract said that the syndication "fee will be paid if the development is completed and finally closed according to the time restraints imposed by the Department of Housing and Urban Development and the Missouri Housing Development Corporation." Although the evidence indicated that HUD's construction deadlines had been extended, plaintiff offered no evidence as to those extensions or their effect. The undisputed proof was that the construction was not completed until months after the dates specified by HUD and that, as a result, Condelco paid liquidated damages and additional interest and expenses.

## II.

In his second point on appeal, plaintiff asserts that the trial court erred in excluding evidence offered by the plaintiff. He claims that the excluded evidence tended to prove that the respondents engaged in a joint venture with Condelco, that the joint venturers earned a profit and that plaintiff's contract entitled him to a share of that profit.

Plaintiff's able counsel on appeal are faced with the fact that at trial the alleged error was not properly preserved for review.

In the first place, the excluded evidence is said on appeal to be "the recorded copy of the Amended and Restated Limited Partnership Agreement for Brush Creek Town Homes II, Ltd." Plaintiff's brief on appeal identifies that document as Plaintiff's Exhibit No. 8, but that exhibit has not been furnished us on this appeal. In fact, no specific reference to any numbered exhibit appears in or near the pages of the transcript to which plaintiff's brief refers us on this point. Nor have we been furnished with defendants' answers to plaintiff's interrogatories to which the particular exhibit is said to have been attached. Plaintiff's brief is probably referring to Plaintiff's Exhibit No. 7 which we have, but, like No. 8, *no reference to it appears on or near* the pages in the transcript to which the plaintiff's brief refers.

A more important consideration, however, is that plaintiff's motion for a new trial failed specifically to state the ground upon which plaintiff sought relief. Rule 78.07 (formerly Rule 79.03) requires that in cases tried to a jury "allegations of error to be preserved for appellate review must be included in a motion for a new trial." The rule provides that, where a definite objection or request was made at trial in accordance with Rule 78.09, a general statement in the motion of any allegation of error based on that objection or request is sufficient.

Here, plaintiff's motion for new trial raised the question of the exclusion of plaintiff's Exhibit No. 8 in its Point 6 and in Points 7 and 8, raised the question of exclusion of plaintiff's Exhibit No. 7. Point 6 complains that Exhibit No. 8 contained evidence relating to HUD's requirements governing the conduct of the construction work plaintiff was hired to supervise.

Point 6 alleges that the exhibit was relevant to plaintiff's claim that he had substantially performed his agreement. Point 7 of the new trial motion alleges that Plaintiff's Exhibit No. 7 contains evidence that plaintiff substantially performed his contract and that defendants' breach of contract rendered further performance impossible. Point 8 substantially repeats Point 7.

On this appeal, however, plaintiff claims that the role of the excluded exhibit (identified in the brief as No. 8) was to identify the two limited partnerships, Brush Creek Town Homes I and II, as joint venturers with the other defendants and to show that they earned a profit which plaintiff was entitled to share.

In *Pasley v. Newton*, 455 S.W.2d 43 (Mo. App.1970), at 47, this court in applying what is now Rule 78.07 said that in a motion for new trial the specific allegations necessary to preserve error "must be sufficiently definite to direct the court's attention to the particular acts or rulings asserted to be erroneous." The court relied on *Schneider v. Southwestern Bell Telephone Co.*, 413 S.W.2d 16 (Mo.App.1967), which said at 19:

> The dual purpose of an after-trial motion is stated tersely in *Fruit Supply Co. v. Chicago, B. & Q. Ry. Co.*, Mo.App. [1938], 119 S.W.2d 1010(4): "The office of a motion for a new trial is to gather together the rulings complained of as erroneous, and solemnly and formally present them, one by one, in black and white to the judge in order that he have a last chance to correct his own errors without the delay, or expense, or other hardships of an appeal. This much is required. Less does not preserve the rulings for review." This is a well established principle of our law of trial and appellate procedure. *Lloyd v. Garren*, Mo. [1963], 366 S.W.2d 341(6, 7).

This principle requires that the grounds of an after-trial motion be specific, not general; and deficiencies in an after-trial motion cannot be supplied by appellant's brief. Civil Rules 79.03 and 83.13(a) so declare. And see *Ayres v. Keith*, Mo. [1962], 355 S.W.2d 914(1, 2), and *Layson v. Jackson County*, [1956], 365 Mo. 905, 290 S.W.2d 109(5).

In addition, an allegation of error on appeal which does not correspond to any point in the motion for a new trial preserves nothing for appeal. *Dockery v. Mannisi*, 636 S.W.2d 372, 378 (Mo.App. 1982).

Plaintiff's motion for new trial was far too general and unspecific to advise the trial judge of plaintiff's true complaint about the court's alleged erroneous ruling, that is, that the court's ruling excluded evidence of the identity of the joint venturers. Plaintiff's Points 6, 7 and 8 in his motion for a new trial made no such complaint or reference to the problem, if it was a problem, of so identifying the limited partnerships. That is plaintiff's Point II on appeal. Furthermore, that Point II in no way resembles or corresponds to the points plaintiff sought to preserve in his motion for new trial and, therefore, may not now be considered. *Dockery v. Mannisi, supra.*

Even if we were to rule that plaintiff's motion for a new trial was not too general and did correspond to his points on appeal, plaintiff would yet be plagued with the problem that at trial counsel made no offer to prove the contents of plaintiff's Exhibit No. 7 or No. 8 so that the relevancy of either document was apparent. Plaintiff's only arguments in favor of reading from the attachment to the defendants' answer to Interrogatory No. 3 were that defendants had furnished the document and that it shows who the limited partners were. (Defendants offered at that point to admit the identity of both the general and the limited partners, but plaintiff's counsel did not respond.) In the event of exclusion of evidence by the trial court, absent a complete offer of proof, the appellant may not rely upon a general allegation of error in his motion for new trial. *See Calvert v. Super Propane Corp.*, 400 S.W.2d 133, 140 (Mo.1966).

Finally, a reading of the entire record reveals that at no point was the question of the limited partnerships' engaging in a joint venture with other defendants in dispute. Moreover, in view of plaintiff's own testimony that the joint ventures in whose profits he was to share were the joint ventures of Condelco with the mini-contractors and not the joint ventures of the owners and their financial backers, the question is moot.

### III.

Plaintiff's third point on appeal is that in excluding parol evidence of negotiations leading up to the contract in issue, the trial court erred because the contract is not an integrated contract, but is incomplete and its meaning is uncertain. Parol evidence would[9] have shown the parties' intended meaning.

█ Nothing in plaintiff's motion for a new trial corresponds to or remotely resembles plaintiff's Point III on appeal. The error, therefore, was not preserved for review. Accordingly, we may not now consider it. *Dockery v. Mannisi, supra.*

In any event, whatever plaintiff's agreement was with one or all of the defendants, it certainly included his right to a share of the *net* syndication proceeds and to a share of the profits Condelco made on its construction contracts. Plaintiff failed to prove either. Therefore, the question whether his agreement was integrated or not is moot.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.